340 P.2d 987

Frank VICKERS and Rose Vickers, his wife,
Appellants,

v.

Most Reverend Daniel J. GERCKE, Bishop
of the Roman Catholic Church of the Dio-
cese of Tucson and his successors, a cor-
poration sole, and Father John Doran, Pas-
tor of St. Thomas the Apostle Church,
Phoenix, Arizona, Appellees.

No. 6476.

Supreme Court of Arizona.

June 18, 1959.

John F. Swartz, and Irwin Cantor, Phoenix, for appellants.

Moore & Romley, and John H. Killingsworth, Phoenix, for appellees.

PHELPS, Chief Justice.

This is a common-law negligence action by plaintiffs Rose Vickers and Frank Vickers, her husband, against the defendants Most Reverend Daniel J. Gercke, Bishop of the Roman Catholic Church of the Diocese of Tucson and his successors, a corporation sole, and Father John Doran, Pastor of St. Thomas The Apostle Church, Phoenix, Arizona. The parties will hereinafter be referred to as plaintiffs and defendants.

Plaintiffs in their complaint allege that on November 24, 1954, the defendants owned and maintained a cafeteria in connection with St. Thomas The Apostle Church located in Phoenix, Arizona; that on this date the plaintiff Rose Vickers was at the request of the defendants working in the cafeteria as a voluntary unpaid worker; that the defendants negligently and carelessly maintained the cafeteria in that they permitted mashed potatoes to be on the floor; that defendants knew or by the exercise of reasonable care should have known that said mashed potatoes were on the floor; that the defendants were further negligent in that they carelessly maintained and kept the cafeteria inadequately lighted; that as a result of the negligence of defendants, plaintiff Rose Vickers stepped upon the mashed potatoes, slipped and fell, sustaining serious injuries.

From the evidence it appears that the plaintiffs were members of St. Thomas The Apostle Church and their adopted daughter was a student at the Church's school. There was a cafeteria in connection with

the school in which the children ate their lunch and Father Doran, the Pastor of the Church, had asked for unpaid workers to help in the cafeteria. Rose Vickers, plaintiff, volunteered to work in the cafeteria and her services were accepted by the Church. She worked for four or more days each week for a period of approximately nine months. She received no compensation, but did receive her meals. She and all of the other workers were under the supervision of one Mrs. Dalton who was the paid manager of the cafeteria. Mrs. Dalton directed the movements and actions and details in which the workers carried out their work.

A daily routine was followed in serving at the cafeteria. At 11:30 a. m. the older children, sixth and seventh grade, would be served cafeteria style, then sit down at the tables and eat their lunch. This was a continuous procedure until all the children had eaten. The youngest children, those in the first and second grades, were served last at the tables. The Sisters would sit with them and supervise. By 12:30 or 1 p. m. the children were usually finished eating. The workers would clean up the kitchen while the table was being set for them to eat. After the workers ate, the tables and chairs were cleaned off and the dishes were washed. Later on in the afternoon the janitor would sweep the floor and mop it.

It was known by all the workers that the children did spill food on the floor. If it was noticed by any of the Sisters or workers that there was food on the floor during the time the children were eating, it would be cleaned up.

On the date that plaintiff was injured the meal had included mashed potatoes. The children had already eaten and were out of the cafeteria. The workers were finishing their meal and plaintiff was going to see one of the Sisters to get a report for Mrs. Dalton. The time was approximately 2 or 2:30 o'clock p. m. As the plaintiff was walking along the aisle through the cafeteria, she stepped on some mashed potatoes which according to the testimony were approximately the size of a quarter. The potatoes caused her to slip and she fell on the cement floor sustaining serious injury. She had not seen the mashed potatoes nor did she know that they were on the floor.

The testimony concerning the lighting of the cafeteria was conflicting. The plaintiff testified that the lighting was poor. Other witnesses testified that the lighting was adequate. The plaintiff testified that as she was walking down the aisle she was looking straight ahead and was not scanning the floor.

At the close of plaintiffs' case defense counsel moved for a directed verdict which was renewed at the close of defendants' case, both of which were denied and the matter submitted to the jury. The jury was unable to agree upon a verdict and was discharged. Later the defendants moved for

a judgment notwithstanding no verdict. The trial judge granted this motion and a judgment was entered in favor of the defendants.

In their appeal to this court plaintiffs list two assignments of error. The first assignment is to the effect that the trial court erred in rendering a judgment notwithstanding no verdict and in denying plaintiffs' motion for a new trial for the reasons that the plaintiffs established that defendants were negligent in failing to remove the mashed potatoes from the floor, and in failing to provide adequate light for the cafeteria. The second assignment of error is that the trial court erred in rendering judgment notwithstanding no verdict, and in denying plaintiffs' motion for a new trial for the reason that contributory negligence or assumption of risk alleged as a defense is a question for the jury and cannot be decided as a matter of law.

Plaintiffs contend that Rose Vickers was an invitee and that the law governing invitees is applicable, but state further that even if she were a servant, under a master servant relationship, the case must be sent back for a new trial. It is our view that Rose Vickers was a servant and not an invitee. See Lee Moor Contracting Co. v. Blanton, 49 Ariz. 130, 134, 65 P.2d 35, 37, which reads as follows:

" "A servant is a person employed to perform service for another in his affairs and who, with respect to his physical conduct in the performance of the service, is subject to the other's control or right to control. 1 American Law Institute, Agency, § 220. * * *' "

See also Consolidated Motors, Inc. v. Ketcham, 49 Ariz. 295, 66 P.2d 246. This then leaves the case to be determined on the basis of the law pertaining to the master servant relationship.

Both plaintiffs and defendants agree that the duty of the master is to provide his servant with a safe place to work and to exercise reasonable care in making the place of work safe. Apache Railroad Co. v. Shumway, 62 Ariz. 359, 158 P.2d 142, 159 A.L.R. 857; 35 Am.Jur., Master and Servant, § 183. Plaintiffs contend that defendants breached this duty in allowing the mashed potatoes to remain on the floor, thereby failing to exercise reasonable care in making the place safe to work; that the trial court should not enter judgment notwithstanding no verdict when reasonable men could differ on the question of whether there was negligence on the part of the defendants.

Defendants contend that plaintiff's evidence construed in its strongest light against defendants shows that there was *no negligence* on the part of the defendants because, as a matter of law, the master is only required to exercise ordinary care for the purpose of making and keeping the

place reasonably safe, and this requirement is qualified by the further rule that if the servant has equal knowledge of the facts and conditions with the master of the defects and dangers therefrom, and they are appreciated by him, then the master is not negligent as a matter of law.

Plaintiffs counter that defendants are trying to merge the question of negligence and the assumption of risk into one proposition, and this cannot be done in Arizona because of the constitutional provision that contributory negligence or assumption of risk on the part of the plaintiff is for the jury to decide.

Both plaintiffs and defendants cite Arizona cases touching on this point. In Inspiration Consolidated Copper Co. v. Conwell, 21 Ariz. 480, 486, 190 P. 88, 90, which is cited by plaintiffs, we said:

"As to the assumption of risk, it must be admitted that the uncontradicted evidence proves that Conwell, for some time prior to the accident, had actual and positive knowledge of the bad condition of the track, and understood and appreciated the danger arising from running the ore-cars over it. Were it not for article 18, section 5, of the State Constitution, which provides that 'the defense of contributory negligence or of assumption of risk shall in all cases whatsoever be a question of fact, and shall, at all times,

be left to the jury,' it would have been the duty of the trial court to have granted the defendant a new trial on the ground that the verdict was contrary to the evidence on the question of the assumption of risk. * * *"

In Pacific Construction Co. v. Cochran, 29 Ariz. 554, 557, 243 P. 405, 406, this court was faced with a similar problem. In that case defendant dug a ditch directly in front of a kitchen where his employees worked. Plaintiffs, husband and wife, worked as a cook and cook's helper, respectively. The evidence established that the husband knew of the ditch (thereby imputing knowledge to the wife) and sent his wife for potatoes without informing her of the ditch or its condition, and as a result the wife was injured. The trial court instructed the jury

"'that (if) plaintiff F. W. Cochran knew at the time of the accident of the existence of the hole or ditch, * * * and * * * directed his wife * * * to go out to where the potatoes were kept, and failed to warn her of such ditch, and that * * * by reason of the failure of the plaintiff * * * F. W. Cochran to warn her of such ditch she fell and sustained the injuries complained of, then plaintiffs cannot recover, and your verdict must be for the defendant.'"

The jury returned a verdict for the plaintiff. In affirming the judgment this court

held that the evident purpose and intent of the constitutional provision is to make the jury the sole arbiter of the existence or nonexistence of contributory negligence or assumption of risk in all actions for personal injuries.

Defendants cite the case of Bowers v. J. D. Halstead Lumber Co., 28 Ariz. 122, 127, 236 P. 124, 126. In that case we said:

"Counsel for appellant, however, contends most strenuously that the demurrer was really based on the theory that the complaint shows affirmatively plaintiff assumed the risk of the employment, and, since under our Constitution that question is always for the jury, it was error to sustain the demurrer. We think the case of Burian v. Los Angeles Cafe Co., 173 Cal. 625, 161 P. 4, declares the principle of law applicable to cases of this kind. Therein it is said:

" 'The assumption of risk necessarily presupposes a failure on the part of the employer to perform some duty which he owes to his employee. In other words, it presupposes, and to be of avail, must be based on, the negligence of the employer. For it is not every risk against injury arising from which the employer is liable to his employee. Every human being lives under ceaseless risk, under perpetual peril to his life and limb. Accidents of astounding character are ever occurring. * * * To render the employer liable for the resultant injury occasioned by any one of them, he must have failed in some duty to the employee. * * * If he has not so failed, the injury falls into one of two categories, for neither class of which is the employer responsible. The injury will have resulted, either from the fault of the employee alone, or will have been the result of unavoidable casualty, arising through no fault of either the employer or the employee.' "

Recently this court in Figueroa v. Majors, 85 Ariz. 345, 338 P.2d 803, 804, stated:

"It is further fundamental that a verdict will not be directed where the evidence on material facts is conflicting, or where on undisputed facts reasonable and fair minded men may differ as to the inferences and conclusions to be drawn, or where different conclusions might reasonably be reached by different minds, and thus the question of negligence and proximate cause is one of fact to be submitted to the jury and not a question of law for the court; if, upon all the facts and circumstances, there is a reasonable chance or likelihood of the conclusions of reasonable men diffreing, then the question is one for the jury. * * *" (Citing cases.)

■ Applying the principles from these cases to the instant case: If the trial judge could say that reasonable men could *not* have drawn different inferences from *all* of the evidence bearing upon the question of negligence (including knowledge on the part of the employee considered in the same light as any other circumstance) he would then have been correct in rendering judgment for defendants, notwithstanding no verdict. On the other hand, if the evidence upon the question of negligence (including knowledge on the part of the employee considered in the same light as any other circumstance) was such that reasonable men could draw different inferences therefrom, then it was error for the trial judge to enter judgment for the defendants.

■ It is our view in this case that reasonable men might differ concerning whether defendants were negligent or not. As stated before, the defendants were under a duty to exercise reasonable care in making the place of work safe. In our opinion, whether they were negligent in failing to discover and clean up the potatoes, is a question for the jury. It should be carefully noted that knowledge was shown on the part of the employee that there was a possibility or a probability that food might be dropped at some unknown place on the floor. This is entirely different from knowing about a particular particle of food at a particular place. The defendants in the present case cannot abdicate their duty to the employee because the employee has knowledge of the mere possibility of food being on the floor.

■ According to the briefs, all evidence with respect to inadequate lighting was stricken by the trial court on motion of the defendants upon the ground that the evidence did not show that the adequacy of the lighting was in any way the proximate cause of the accident. There is only a partial transcript of record, which does not contain the ruling made by the trial judge. Therefore, we must rely on the reason stated in the briefs as to why the testimony was stricken. Defendants argue that the plaintiff testified that she was walking with her face forward and was not scanning the floor, and therefore, whether the lighting was good or poor would be beside the point, as it is highly doubtful that an inadequacy in lighting could have been the proximate cause of the accident.

We hold that it was error to strike the testimony concerning the adequacy of lighting. The fact that a person has his face forward does not, as a matter of fact, preclude him from seeing substance on the floor providing the light is adequate. There was a direct conflict in testimony as to the adequacy of lighting. The jury under proper instruction should determine whether the light was adequate, and whether or not it was the proximate cause of the injury.

The judgment of the trial court is reversed and the case is remanded to the superior court for trial in accordance with this opinion.

STRUCKMEYER, UDALL, JOHNSON, and BERNSTEIN, JJ., concurring.