499 P.2d 185

SCOTTSDALE JAYCEES, a corporation, Petitioner,

v.

SUPERIOR COURT OF MARICOPA COUNTY, Arizona, and the Honorable Marilyn A. Riddel, Respondents,

Ron WEAVER and Priscilla Weaver, his wife, et al., Real Parties in Interest.

No. 1 CA–CIV 2046.

Court of Appeals of Arizona, Division 1, Department B.

July 27, 1972.

Rehearing Denied Sept. 14, 1972.

Review Denied Oct. 17, 1972.

Jennings, Strouss & Salmon by Nicholas Udall, Phoenix, for petitioner.

Leibsohn, Eaton, Gooding & Romley, P. C. by Joe M. Romley, Phoenix, for real party in interest Lenore J. Regelski.

Simon & Jekel by Louis G. Jekel, Jr., Scottsdale, for real parties in interest Weavers.

JACOBSON, Judge.

This special action calls into question the propriety of the trial court's failure to grant a motion for summary judgment after it had found there were no "genuinely disputed issues of material fact."

█ The real parties in interest in this action strenuously argue that this court should not exercise special action jurisdiction to review a denial of a motion for summary judgment. Generally, we are reluctant to accept jurisdiction in this type of situation and have previously indicated that our review of denials of motions for summary judgment will be sparingly exercised. Southwest Cooperative Wholesale v. Superior Court, 13 Ariz.App. 453, 477 P.2d 572 (1971). However, where the trial court has determined that no genuine dispute exists as to the material facts, where additional costs and expense will result to both parties if a trial occurs and our ruling on the issue presented will effectively terminate the litigation, and where there exists a general public interest such as determining the liability of charitable organizations for its travelling membership, we deem it appropriate to accept jurisdiction. Southwest Cooperative Wholesale v. Superior Court, *supra*.

The undisputed evidence before the trial court shows that in October 1968, Ron Weaver, Joseph Cox and Edward Regelski were members of the Scottsdale Jaycees, a non-profit, charitable civic organization of young men in the Scottsdale, Arizona, area. At a regular membership meeting of the Scottsdale Jaycees, held in October 1968, the membership was informed by the president that the quarterly board meeting of the Arizona Jaycees, of which Scottsdale's Jaycees is a member, was to be held at 9 a. m. on October 20, 1968, in Prescott, Arizona. The president stressed the necessity of at least ten members of the Scottsdale Jaycees being present at that meeting in order for the Scottsdale chapter to be adequately represented on an issue coming before that State Board meeting. The president then called for a show of hands as to who could attend the Prescott meeting. Members Weaver, Cox and Regelski volunteered to attend that meeting and were designated delegates. These three members then decided between them that they would drive to Prescott in Cox's automobile. The Scottsdale Jaycees neither directed nor compensated these members for the mode of transportation from Phoenix to Prescott. However, it is agreed that once at the meeting the delegates were to vote in the manner directed by the leadership of the Scottsdale Jaycees.

On the evening of October 19, 1968, while enroute to Prescott, Arizona, to attend the State Board meeting the following morning,[1] the automobile driven by Cox was involved in a one-car accident resulting in the deaths of Cox and Regelski and in serious injuries to Weaver.

Real parties in interest, Ron Weaver and Priscilla Weaver and Lenore J. Regelski, brought separate actions for damages and wrongful death against real party in interest Michael Pierce, Special Administrator of the Estate of John Cox, deceased, and the petitioner Scottsdale Jaycees. These separate actions were consolidated and after extensive discovery, the Scottsdale Jaycees moved for summary judgment in its favor on the grounds that the deceased Cox was not a servant or agent of the Jaycees at the time the accident occurred and hence it was not liable under the doctrine of *respondeat superior.*

---

1. There is evidence to support the inference that it was necessary for the parties to leave Phoenix the evening before the meeting in order to arrive at an early hour to receive an "early bird award" for their organization.

The trial court's order denying the motion for summary judgment stated:

"It appears to the Court that there is no genuinely disputed issue of material fact, but it further appears that reasonable inferences to be drawn from those undisputed facts are genuinely disputed and that the conclusions to be drawn from the undisputed facts properly are the province of the trier of fact and not properly decided upon motion . . . ."

■■ We would agree with the trial court that if undisputed material facts give rise to factual inferences over which reasonable men could differ, summary judgment is not proper. Livingston v. Citizen's Utility, Inc., 107 Ariz. 62, 481 P.2d 855 (1971). However, we fail to find any disputed *factual* inferences which arise from the undisputed facts in this case. Rather, it is the legal conclusions to be drawn from these facts that are in actual dispute and these are properly resolved by the court sitting in its capacity as judge and not in its capacity as a trier of fact. Fendler v. Texaco Oil Co., 17 Ariz.App. 565, 499 P.2d 179 (filed July 20, 1972).

In our opinion, the disputed legal conclusions to be decided under the undisputed facts of this case are:

1. May volunteers be servants or agents for a principal? and,

2. If so, were these servants or agents within the course and scope of their duties for their principal while engaged in travel to a destination where these duties were to be exercised?

■■ The first question presents relatively few problems. As is stated in The Restatement (Second) of Agency, § 225 (1958):

"One who volunteers services without an agreement for or expectation of reward, may be a servant of the one accepting such services."

The "may" factor in the above statement is conditioned upon the "consent or manifestation of consent to the existence of the relation by the person for whom the service is performed." Restatement (Second) of Agency § 225, comment c. In this case there is no dispute that the Scottsdale Jaycees consented to Cox acting as a volunteer delegate to the Prescott State Board Meeting, and hence he can be considered a servant or agent in the realm of *respondeat superior* under Section 225. *See* Vickers v. Gercke, 86 Ariz. 75, 340 P.2d 987 (1959).

■ The second question poses a more difficult problem and really asks the question of when did that servitude or agency commence—at the time Cox left Phoenix to travel to Prescott to attend the meeting of his principal or at the time Cox arrived in Prescott and entered upon his duties as a delegate under the direction of his principal? It is necessary to make this "when" determination, for the doctrine of *respondeat superior* only applies if the relation of master and servant existed at the time the tort was committed. Ray v. Tucson Medical Center, 72 Ariz. 22, 230 P.2d 220 (1951). In making this determination as to whether the master-servant relationship existed at the time of the tortious conduct complained of, we must keep in mind the general rule of master and servant that a master is only liable for the tortious wrongdoings of his servant or agents when those tortious acts are committed by the servants or agents within the scope of their employment.[2] Stone v. Arizona Highway Commission, 93 Ariz. 384, 381 P.2d 107 (1963). Such acts are only within the scope of employment, if among other things, the acts occur substantially within the authorized time and space limits. Transamerica Ins. Co. v. Valley National Bank, 11 Ariz.App. 121, 462 P.2d 814 (1969); Restatement (Second) of Agency § 228. The Restatement interprets

2. We use the term "employment" here and in the balance of this opinion to denote the field of action within which the servant is operating, as obviously, Cox was not an "employee" of Scottsdale Jaycees in the sense that he was hired and compensated for his services.

"time" within the above definition as "only during a period which has a reasonable connection with the authorized period." Restatement (Second) of Agency, § 233. In comment (a) to this section, Restatement explains:

"The employment exists only during the time when the servant is performing or should be performing the work which he is employed to do. *It does not begin at the time when it is necessary for him to act in order to perform the required service.* It begins only when the master has a right to direct the method by which the servant is to perform the work, and terminates when the master has no longer a right to control it." (Emphasis added.)

This principle has found expression in the "coming and going" rule familiar in workmen's compensation cases, that is, travel necessarily incurred in coming to or going from work is not within the scope of the employment. McCampbell v. Benevolent & Protective Order of Elks No. 536, 71 Ariz. 244, 226 P.2d 147 (1950); Sendejaz v. Industrial Commission, 4 Ariz.App. 309, 420 P.2d 32 (1966).

■ Applying these principles to the facts in this case it is apparent that Cox would not have become a servant of the Jaycees until he arrived in Prescott and proceeded to exercise his duties as a delegate. It was at this point that the Scottsdale Jaycees exercised their right to direct or control Cox in his voting function, the right to direct or control being a necessary element in the creation of the master-servant relationship. Throop v. F. E. Young & Company, 94 Ariz. 146, 382 P.2d 560 (1963); Larsen v. Arizona Brewing Co., 84 Ariz. 191, 325 P.2d 829 (1958). It therefore follows that while Cox was travelling to Prescott in order to exercise this voting privilege, the relation of master and servant did not exist. Travel in this case is the act referred to in the Restatement which, although necessary, does not start the time the relationship of master and servant commences, when it uses the words "[the relationship] does not begin at the time *when it is necessary for him to act in order for him to perform the required service.*" Restatement (Second) of Agency § 233, comment (a). (Emphasis added.)

In this regard we see no difference in the legal theory involved under the facts in this case from the legal theory involved if the facts were such that Cox was specifically asked to attend a regular meeting of the Scottsdale Jaycees in Scottsdale in order to deliver an important report and was involved in an automobile accident while driving from his home to that meeting. Could it be seriously argued that the Scottsdale Jaycees would have vicarious liability for Cox's accident in such circumstances? We believe not.

■ Real parties in interest have cited to the court the case of Vind v. Asamblea Apostolica De La Fe En Cristo Jesus, 148 Cal.App.2d 597, 307 P.2d 85 (1957), where under circumstances strikingly similar to those presented here, the California Court of Appeals held than an uncompensated, acting pastor who was involved in an automobile accident while enroute to a regional meeting of his church was within the scope of his employment and the church was liable under the doctrine of *respondeat superior.* The California decision turned on the application of the rule that "if the employee is driving in the discharge of a duty for which he was employed by the employer or for the accomplishment of a result desired by the employer the latter may be held liable under the doctrine of *respondeat superior.*" 307 P.2d at 89.

As a general statement of law we have no quarrel with this rule, assuming it is applied *after* the employee has entered upon his duties as an employee. Thus, an employee who is sent upon an errand by his employer and while performing that errand is involved in an automobile accident, assuming time and space limitations of the errand are present, the employer may well be liable under *respondeat superior. See* Casselman v. Hartford Acc. & Ind. Co., 36

Cal.App.2d 700, 98 P.2d 539 (1940). This does not, however, answer the question as to *when* this employment commenced, and it is this issue that the California case failed to focus on. For this reason we decline to follow its reasoning.

For the foregoing reasons, the relief requested by petitioner Scottsdale Jaycees is granted and the trial court is instructed to grant petitioner's motion for summary judgment.

HAIRE, C. J., Division 1, and EUBANK, J., concur.