534 P.2d 1073

**Rex W. OLSON, Appellant,**

v.

**STAGGS–BILT HOMES, INC., a corporation, Appellee.**

**No. I CA–CIV 2725.**

Court of Appeals of Arizona,
Division 1,
Department A.

May 6, 1975.

Review Denied July 10, 1975.

Traynor & Herbert by John D. Herbert, Chandler, Estrada & Estrada, P. A. by Ralph Estrada, Burch, Cracchiolo, Levie, Guyer & Weyl by John F. Day, Phoenix, for appellant.

Jennings, Strouss & Salmon by Stephen A. Myers, Phoenix, for appellee.

## OPINION

OGG, Presiding Judge.

Rex W. Olson was wounded when a gun carried by Richard Urban, an employee of Staggs-Bilt Homes, discharged. The incident occurred at the service station where Olson was employed. Urban was at the station to get gas for the company vehicle. Olson sued Urban and Staggs-Bilt Homes for the damages he sustained. Staggs-Bilt was sued on two theories: *respondeat superior* and negligent employment. Defendant appellee Staggs-Bilt Homes moved for summary judgment and the motion was granted. Olson appeals that decision.

Richard Urban was hired by Jack Greer on behalf of Staggs-Bilt to patrol several subdivisions that were under construction by Staggs-Bilt. Urban was instructed to observe and report suspicious activities to the police or to Greer, but was not to become involved. On December 4, 1972, Urban picked up a Staggs truck and proceeded to a service station to fill the truck with gas before starting his patrol. There is no dispute that this occurred within the time frame of Urban's employment. While at the gas station, Urban, for some reason, pulled his gun from its holster and Olson was shot. The testimony diverges sharply regarding whether the gun was pulled for Olson's inspection or whether it was displayed in horseplay; in either case it is clear that the shooting was accidental.

A second dispute arises regarding Urban's authority to carry a pistol. It is conceded by both parties that Urban was given permission and even provided a gun on one particular evening (not the evening involved here). Staggs-Bilt, by the affidavit of Greer, states that aside from that one evening no permission was given nor was a weapon provided. In fact, it is claimed that Urban was explicitly commanded not to carry a weapon. Urban maintains that he was never instructed not to carry a gun; that the gun he was provided for the one particular night was left under the seat of the truck for him for several weeks thereafter; and, that he thinks Greer had

seen him with the gun strapped on his hip and had never commented.

The trial court held that Urban was acting outside the scope of his employment when the shooting occurred and therefore Staggs-Bilt was not liable under the theory of *respondeat superior*. Appellant Olson is of the opinion that since the manner in which the accident occurred and the circumstances under which Urban carried the gun were subject to dispute that the motion for summary judgment was improvidently granted.

■ A motion for summary judgment should be granted only when no material questions of fact exist and the conflict is susceptible of resolution as a matter of law. Lundy v. Prescott Valley, Inc., 110 Ariz. 362, 519 P.2d 61 (1974); Gibson v. Parker Trust, 22 Ariz.App. 342, 527 P.2d 301 (1974). The conflict regarding the manner in which the accident occurred and the circumstances of Urban carrying a gun, in this court's opinion, are not material to the resolution of the problem. An employer is not liable for those acts of his employees which are committed outside the scope of employment. Scottsdale Jaycees v. Superior Court of Maricopa County, 17 Ariz.App. 571, 574, 499 P.2d 185, 188 (1972). Defining those actions which are within conduct described as "scope of employment" is sometimes a difficult task; not in this case however.

Arizona ascribes to the Restatement (Second) of Agency § 228 (1958) definition of the phrase "scope of employment." Transamerica Insurance Co. v. Valley National Bank, 11 Ariz.App. 121, 462 P.2d 814 (1970). The section states in relevant part:

"(1) Conduct of a servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master . . . ."

■ It is conceded by both parties that the accident occurred during Urban's hours of employment and at a place where he was authorized to be. Accepting either version of how the gun discharged does not show the conduct to be of a kind authorized. Nor was the activity precedent to the injury actuated in part by any desire to serve the master.

Similarly, it is immaterial whether Urban carried a weapon with or without the approval or consent of Staggs-Bilt. Under either theory the gun was not drawn for any conceivable purpose pertinent to Urban's employment.

Appellant Olson relies in part on Scrivner v. Boise Payette Lumber Co., 46 Idaho 334, 268 P. 19 (1928) for the proposition that the conflict of testimony regarding the manner in which the accident occurred was material and thereby precluded a summary judgment. Scrivner is a well reasoned opinion; it varies significantly from this case, however. Scrivner was a watchman authorized to carry a gun at a box factory. A party was held at the factory and somehow Scrivner shot and killed another employee. Scrivner stated that the other person was shot while they were horseplaying. A summary judgment was granted in favor of Scrivner's employer on the basis that Scrivner was acting outside the scope of employment. The Supreme Court reversed; it held that there was only one witness—Scrivner—and he obviously was an interested party. The Court concluded that the jury should decide whether it was possible that the shooting had occurred in a manner different from that described by the interested party Scrivner.

In this case it is conceded that the accident occurred either as a result of horseplay or accidentally as Urban handed the gun to Olson for his inspection. Regardless of the version that is accepted it is clear that the conduct was outside the scope of employment. Relevant language of Scrivner indicates that that court would reach the conclusion we have reached here.

"The fact that [he] was engaged in his general line of duty in going about the premises as a watchman, and even as such carrying the pistol, does not of itself serve to render the appellant liable for his act in drawing and pointing it at deceased, if that were done as a joke. It is not enough that the wrongful act was in some way associated with the servant's authorized functions, or that he committed it at a time when he was occupied with the discharge of those functions. If it was not done as a means or for the purpose of performing his work, or in the scope of his employment, the master is not liable." Scrivner v. Boise Payette Lumber Co., 268 P. at 21 (1928).

Nor can we attach material import to either version of Urban's carrying a weapon. Under either version it was not drawn to serve the master. We conclude that as a matter of law Urban was acting outside the scope of his authority when he drew the weapon from its holster. We concur in this passage from Gilbert v. Village of Bancroft, 80 Idaho 186, 327 P.2d 378 (1958):

"The test of the liability of an employer for injuries inflicted by servants with firearms [is] . . . whether or not the servant was, at the time of the shooting, acting within the scope of his employment."

Accordingly, we affirm the trial court's summary judgment on the *respondeat superior* count.

Appellant's second cause of action was the alleged negligence of Staggs-Bilt in employing Urban. Complete reliance on this cause of action is placed on Restatement (Second) Agency § 213 (1958) set forth below:

"§ 213. Principal Negligent or Reckless
 A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:

(a) in giving improper or ambiguous orders of in failing to make proper regulations; or

(b) in the employment of improper persons or instrumentalities in work involving risk of harm to others:

(c) in the supervision of the activity; or

(d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control."

Appellant makes various arguments under the different subsections in an attempt to demonstrate that a question of fact exists which is proper only for the jury's consideration. We disagree.

Urban was a nineteen year old man hired to patrol two subdivisions. If something was awry he was not to become involved but rather was to contact the proper authorities. There is no evidence that Urban was known to be vicious or careless when hired by Staggs-Bilt. No special training was necessary to allow Urban to execute his duties; the job was relatively simple.

Appellant Olson's entire theory of negligent employment rests upon the fact that Urban carried a gun and injured Olson with the weapon. We are unconvinced that this theory is adequately proven.

"One who employs another to act for him is not liable under the rule stated in this Section merely because the one employed is . . . careless. If liability results it is because, under the circumstances, the employer has not taken the care which a prudent man would take in selecting the person for the business in hand. Restatement (Second) Agency § 213 comment d (1958)."

■ Regardless of whose version of: (1) how the accident occurred and (2) whether Urban was or was not authorized to carry a weapon, is accepted, summary

judgment was properly granted. The appellant has failed, as a matter of law, to prove a *prima facie* case of negligent employment which would warrant submission of the issue to the jury.

The judgment of the trial court is affirmed in its entirety.

DONOFRIO and FROEB, JJ., concur.