591 P.2d 567

**Melanie Kay MAXWELL, a single woman, Plaintiff/Appellant,**

**v.**

**Tommy BELL and Gayle Bell, husband and wife, and ZZ Cattle Corporation, Defendants/Appellees.**

**No. 2 CA–CIV 3083.**

Court of Appeals of Arizona, Division 2.

Feb. 16, 1979.

---

476

Ronald D. Mercaldo, Tucson, for plaintiff/appellant.

Lesher, Kimble & Rucker, P. C., by Michael J. Gothreau and Stephen H. Lesher, Tucson, for defendants/appellees.

## OPINION

RICHMOND, Chief Judge.

Plaintiff Melanie Kay Maxwell was injured by a bullet from a pistol held by Brian Sheppard, 16, whose father was employed as foreman of a cattle ranch owned by defendants Tommy Bell and ZZ Cattle Corporation. Brian and his mother had been killing squirrels at a horse corral near their home on the ranch. Maxwell commenced an action for her injuries, naming as defendants the ranchowners as well as the Sheppards. She appeals from partial summary judgment in favor of the owners, contending there are genuine issues of fact as to whether Brian was a gratuitous employee acting within the scope of his employment at the time she was injured.

On appeal from a summary judgment, the evidence is considered in a light most favorable to the party opposing the motion. *Hall v. Motorists Insurance Corporation*, 109 Ariz. 334, 509 P.2d 604 (1973). Brian's father on deposition described his son's role in the ranch work:

Q. Did he ever participate in the work that was done on the ranch?

A. Oh, like maybe get off his horse and open a gate for me or something.

Q. Did he participate more actively in work at special times like perhaps roundup time, which I understand requires a little more manpower?

A. Yes, he would ride every day in roundups.

Q. And during those times, he would actually participate in the work of rounding up the cattle, is that correct?

A. He didn't have any responsibility, but he did go along.

Q. And he would help out?

A. Yes, he'd help out, fill a hole.

Brian testified on deposition that he rode with his father for pleasure. Bell testified he had seen the boy riding in roundups and doing other things—"repairs and that sort of thing"—around the Sheppard home.

Brian and his mother both testified they frequently shot squirrels near the corral because the squirrels would undermine postholes, causing the fence to collapse. On the day in question, Brian's gun was in its holster as Maxwell approached. An argument ensued and at some time Brian drew the gun and pointed it at Maxwell.

Q. Did you intend to fire it?

A. No, I wouldn't have.

Q. Did you realize when you fired the gun that you were firing the gun?

A. I didn't realize anything until it was all over.

The fact that Brian was not paid by the ranchowners for his endeavors does not preclude application of the master-servant doctrine. *Scottsdale Jaycees v. Superior Court,* 17 Ariz.App. 571, 499 P.2d 185 (1972). Whether a gratuitous undertaking is part of the master-servant relationship is determined by two key elements: (1) Has the actor submitted himself to the directions and control of the one for whom the service is done? (2) Was the primary purpose underlying the act to serve another? *Bond v. Cartwright Little League, Inc.,* 112 Ariz. 9, 536 P.2d 697 (1975). Assuming the first element is satisfied by the testimony regarding Brian's day-to-day activities on the ranch or the inferences arising therefrom, the evidence is insufficient to create an issue of fact on the second, and the ranchowners were entitled to judgment as a matter of law.

Plaintiff's reliance on *Scrivner v. Boise Payette Lumber Co.,* 46 Idaho 334, 268 P. 19 (1928), is misplaced. In that case the employee was a watchman and the court held that it was for the jury to decide whether he was acting within the scope of his employment in drawing and pointing his pistol, despite his uncontradicted testimony ᴜₕat he and the victim were engaged in horseplay when the latter was shot and killed. In the present case, however, even if Brian was acting as a gratuitous servant in killing squirrels, there are no facts from which it can be inferred that such employment encompassed his deliberately drawing and pointing the gun at Maxwell. Regardless of how the gun discharged, Brian's conduct was unrelated to any service for the defendant ranchowners and the trial court properly entered summary judgment in their favor. *See Olson v. Staggs-Bilt Homes, Inc.,* 23 Ariz.App. 574, 534 P.2d 1073 (1975).

Affirmed.

HOWARD, J., and JACK G. MARKS, Superior Court Judge, concur.

NOTE: Judge JAMES D. HATHAWAY having requested that he be relieved from consideration of this matter, Judge JACK G. MARKS was called to sit in his stead and participate in the determination of this decision.