962 F.2d 17
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Larry COTTAM and Melanie Cottam, Plaintiffs-Appellants,
v.
FIRST BAPTIST CHURCH OF BOULDER, Defendant-Appellee.
 No. 91-1071.
 United States Court of Appeals, Tenth Circuit.
 April 29, 1992.
 
 1
 Before BRORBY and McWILLIAMS, Circuit Judges, and ALLEY, District Judge.
 
 
 2
 ALLEY, District Judge.
 
 
 3
 The present action comes before this Court on an appeal from an order granting judgment notwithstanding the verdict, in favor of defendant First Baptist Church of Boulder ("First Baptist") and against plaintiffs Larry Cottam and his wife Melanie Cottam. Plaintiffs contend that the district court erred in rendering judgment in favor of defendant when the evidence was sufficient to support the verdict of the jury.
 
 
 4
 First Baptist owned a church camp site in the James Park area west of Boulder, Colorado. The site was usually used for church activities; however, First Baptist allowed some individuals to use the site for a nominal fee. Robert Chambers had been a member of First Baptist before relocating to Texas and had used First Baptist's camp as a summer vacation site for himself and his family for many years. During these visits, he had contributed time and effort to the maintenance and improvement of the church camp.
 
 
 5
 In 1982, Mr. Chambers obtained permission from First Baptist to invite a group from Texas[1] to join him on his summer vacation trips to the church camp for the same nominal fee.[2] Dr. Cottam, his wife, and his family were members of the Texas group, and accompanied Mr. Chambers to the church camp for family vacations for several years prior to the incident now at issue. Mr. Chambers made the arrangements with First Baptist for the annual summer vacations of the Texas group. He also continued to perform volunteer maintenance and improvement projects with the assistance of the Texas group. Although Mr. Chambers had performed improvements in the past with the help of the Texas group, it had never been mandatory for vacationers in the Texas group to assist him in his performance of the these improvements.
 
 
 6
 After the 1987 trip was organized, Mr. Chambers discussed with James Bradfield, the First Baptist member who was responsible for its church camp, what projects would be appropriate for accomplishment that summer. Mr. Bradfield suggested that Mr. Chambers either build a new foot bridge or dismantle an old house trailer. Mr. Chambers, after consulting with several members of the Texas group, elected to build the foot bridge. Mr. Bradfield suggested that the construction commence by felling a dead tree across the creek as a base for the bridge. Beyond this suggestion, no one in First Baptist controlled the specifics of the project, nor exercised any supervision over the project once it was commenced.
 
 
 7
 On the morning of July 21, 1987, Dr. Cottam elected to cancel previous plans for that day and participate in the project because he wanted to help the Texas group complete it. The members of the Texas group who undertook the project decided to follow the suggestion of using the dead tree located on the south shore of the creek as a base for the foot bridge. Using a personal chain saw furnished by Mr. Bradfield, Dr. Cottam volunteered to be one of the members of the Texas group who would cut the dead tree down. While he was operating the chain saw near the base of the tree, the trunk unexpectedly broke approximately twenty-three (23) feet above the ground. After the trunk broke in two, the upper part of the tree, was thrown back across the creek and struck Dr. Cottam on the head, shoulder, and upper body. Dr. Cottam was unable to retreat because he had not secured an adequate escape route. This impact caused Dr. Cottam to suffer severe permanent injuries.
 
 
 8
 The Cottams alleged two theories for recovery in their complaint. The first claimed Larry Cottam was an "gratuitous employee" of First Baptist who had not been afforded reasonable supervision, and the second was that the members of the Texas group were independent contractors who were negligently hired by First Baptist to complete the project. At the close of evidence in the jury trial, First Baptist moved for a directed verdict on both theories of recovery.
 
 
 9
 The district court granted a directed verdict on the independent contractor claim (a ruling not at issue on appeal), while specifically reserving the right to enter judgment notwithstanding the verdict on the "gratuitous employee" claim after it had been submitted to the jury. The jury returned a verdict in favor of the Cottams on the "gratuitous employee" claim. Thereafter, the district court indeed granted the defense motion for judgment notwithstanding the verdict. This appeal followed.
 
 I.
 Standard of Review
 
 10
 We review a grant or denial of a motion for judgment notwithstanding the verdict de novo, applying the same standard as did the trial court. Rajala v. Allied Corp., 919 F.2d 610, 615 (10th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1685, 114 L.Ed.2d 80 (1991); Suggs v. State Farm Fire & Casualty Co., 833 F.2d 883, 886 (10th Cir.1987), cert. denied, 486 U.S. 1007, 108 S.Ct. 1732, 100 L.Ed.2d 196 (1988). The appropriate inquiry under this standard is whether the evidence is sufficient for a reasonable jury properly to find a verdict in favor of the party against whom the motion is directed. Rajala, 919 F.2d at 615 (citing Hurd v. American Hoist & Derrick Co., 734 F.2d 495, 498-99 (10th Cir.1984)). In making this determination, we must view the evidence and all inferences in the light most favorable to the nonmoving party. Rajala, 919 F.2d at 615. However, the nonmovant's argument must be supported by more than a mere scintilla of evidence. Meyers v. Ideal Basic Indus., Inc., 940 F.2d 1379, 1383 (10th Cir.1991) (citing E.E.O.C. v. Sperry Corp., 852 F.2d 503, 507 (10th Cir.1988)).
 
 II.
 Duty Owed As Gratuitous Employee
 
 11
 Plaintiffs' "employee without reasonable supervision" claim hinges on the existence of a duty owed by First Baptist to Dr. Cottam. A federal court exercising diversity jurisdiction over this issue must "ascertain and apply Colorado law [with the objective] that the result obtained in federal court [should be] the result that would be reached ... in a Colorado court.". Lutz Farms v. Asgrow Seed Co., 948 F.2d 638, 641 (10th Cir.1991); Erie R.R. Co. v. Tompkins, 304 U.S. 64, 72-3 (1938). In the absence of authority from Colorado's highest court, a federal court must, in essence, sit as a state court and predict how the Colorado Supreme Court would rule. Daitom, Inc. v. Pennwalt Corp., 741 F.2d 1569, 1574 (10th Cir.1984).
 
 
 12
 Sitting en banc, the Supreme Court of Colorado has stated that the question of whether a defendant owes a plaintiff a duty is a question of law to be determined by the Court, as opposed to a jury question. Taco Bell, Inc. v. Lannon, 744 P.2d 43 (Colo.1987) (citing Smith v. City & County of Denver, 726 P.2d 1125, 1127 (Colo.1986) [;] accord Metropolitan Gas Repair Service, Inc. v. Kulik, 621 P.2d 313, 317 (Colo.1980); Restatement (Second) of Torts § 328B (1965)).
 
 
 13
 In urging the existence of a duty owed to Dr. Cottam, plaintiffs propose that Dr. Cottam was a "gratuitous employee" of First Baptist at the time of his injury. The "gratuitous employment" doctrine has never been directly addressed in Colorado case law; however, plaintiffs offer authority from other jurisdictions in support of their position.
 
 
 14
 The Arizona Supreme Court recognized that although someone acts gratuitously, he may be considered an employee within the master servant doctrine. Bond v. Cartwright Little League, Inc., 536 P.2d 697 (1975) (citing Scottsdale Jaycees v. Superior Court, 17 Ariz.App. 571, 499 P.2d 185 (1972); Restatement (Second) of Agency, § 225 (1958)). The two key elements to the determination of whether a gratuitous undertaking is deemed as employment are whether the primary purpose of the act was to serve another regarded as "employer," and whether the actor has submitted himself to the directions and control of the one for whom the service is performed. Bond, 536 P.2d at 702.
 
 
 15
 Applying these principles to the case at hand, we conclude that Dr. Cottam failed even to raise an issue for jury decision whether he was acting as a "gratuitous employee" of First Baptist. On the first prong of the inquiry, it is conceded that Dr. Cottam's actions were for the benefit of a group. However, there was a failure of proof that the church was the group he intended to benefit. Dr. Cottam stated that he changed his previous plans so that he could help the Texas group complete the project. The "gratuitous employment" doctrine looks to whether the primary purpose underlying the act was to serve the employer directly. Id.
 
 
 16
 The second and more important factor indicating the existence of a "gratuitous employment" relationship has been the posture of the employer to control the actions of the prospective employee. Id at 702-3; Vickers v. Gercke, 86 Ariz. 75, 340 P.2d 987 (1959). In each case "gratuitous employment" cited to us, the "employer" had the ability to control the actions of the "employee." For example, in Bond, the Cartwright Little League Inc., planned to remove some stadium lights they had purchased. Bond, 536 P.2d at 699. A member of the Cartwright Little League personally solicited volunteers at a general meetings to perform the task. Id at 700. After declining to volunteer, Mr. Bond, a parent of one of the league members, was directly approached by the Little League President. Id. He agreed to remove the lights and was later injured in his attempt to climb a 100 foot light pole. The court noted that although Mr. Bond was free to refuse to do what he was told, at all times he was working under the direct request and control of the Cartwright Little League. Id at 703.
 
 
 17
 Dr. Cottam was acting under his own control, and not under any church supervision. Where no supervision is reasonably to be anticipated and none is done, negligent supervision as a concept is paradoxical. First Baptist did not control the specific design of the project, nor did it exercise any supervision over the project once it was commenced. The record reveals that Dr. Cottam was the likely candidate for handling the chain saw since he had previous experience. He and the members of the Texas group alone made decisions about the operation of the felling. First Baptist played no part in the undertaking beyond suggesting the general nature of the project. First Baptist had no part in selecting the specific members of the group who participated in the project, nor did First Baptist participate in the least in the undertaking.
 
 
 18
 First Baptist assumed no duty toward Dr. Cottam, and in the absence of such a duty, no evidence could support the jury's verdict. Plaintiffs' claim must fail. The district court's grant of judgment notwithstanding the verdict is affirmed.
 
 III.
 Motion For A New Trial
 
 19
 In light of our decision affirming the district court's grant of First Baptist's motion for judgment notwithstanding the verdict, the new trial issue is now moot, as are the arguments relating thereto. 5A J. Moore & J. Lucas, Moore's Federal Practice, para. 50.14 (2d ed.1991).
 
 Conclusion
 
 20
 For the aforementioned reasons we AFFIRM the decision of the district court in all respects.
 
 
 
 *
 Honorable Wayne E. Alley, United States District Judge for the Western District of Oklahoma, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Mr. Chamber's group from Texas was his Sunday School class from the United Methodist Church of Richardson Texas. We will hereinafter refer to this group as "the Texas group."
 
 
 [2]
 A four (4) dollar per person fee was charged by First Baptist for the use of the church camp the year in question