652 P.2d 163

**JOHNSON STEWART MINING CO., INC., Petitioner Employer,**

**Transamerica Insurance Company/Premier Insurance, Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**David W. Butler, Respondent Employee.**

**JOHNSON STEWART MINING CO., INC., Petitioner Employer,**

**Transamerica Insurance Company/Premier Insurance, Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**George A. Webb, Respondent Employee.**

**No. 1 CA–IC 2625.**

Court of Appeals of Arizona, Division 1, Department C.

Aug. 24, 1982.

Rehearing Denied Sept. 20, 1982.

Review Denied Oct. 5, 1982.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears, P.A. by W.C. Wahl, Jr., Larry L. Smith, Phoenix, for petitioners.

James A. Overholt, Acting Chief Counsel, The Industrial Com'n of Arizona, Phoenix, for respondent.

Skousen, McLaws & Skousen, P.C. by John Larry McLaws, James Darrell Jenkins, Mesa, for respondent employees.

## OPINION

EUBANK, Judge.

The issue presented in this special action review of an Industrial Commission award for compensable claim and temporary disability is whether there is reasonable evidence to support the finding by the administrative law judge that respondents were injured by accident occurring in the course of their employment. We find sufficient evidence and affirm the award.

Respondent employees George A. Webb and David W. Butler (respondents) worked as diesel mechanics for petitioner employer Johnson Stewart Mining Company, Inc. (petitioner employer). Three or four days prior to July 15, 1980, respondents were requested by their foreman, Lewis Crockett, to attend an educational seminar, after working hours, sponsored by the manufacturer of equipment used by the petitioner employer. Respondents, along with Mr. Crockett, went together in a car driven by Gary Kirkpatrick. They were picked up from their homes in Chandler and Mesa and

driven to the Rodeway Inn in Phoenix, the site of the seminar. On their way home, after the seminar, the car collided with another car and both respondents suffered serious injuries.

Respondents filed Workmen's Compensation claims, which were denied by separate notices of claim status and respondents filed timely requests for a hearing. A consolidated hearing for both claims was held on March 11, 1981. Following the hearing, the administrative law judge issued his award finding compensable claims and awarding temporary benefits to both respondents. The award was based, primarily, upon the testimony of Respondent Webb[1] and Mr. Crockett. The administrative law judge affirmed his decision upon administrative review, and special action review to this court followed.

Petitioners' argument on review is that the educational seminar was primarily for the benefit of the respondents rather than for the employer, and thus the injuries sustained while returning from the seminar were not compensable. Petitioners further argue that the employer's authorization or permission to attend the seminar is not sufficient to make the injuries compensable. They contend that the employer must have required, or at least specifically urged, the employee's attendance at the seminar.

■ For an industrial injury to be compensable, it must arise out of, and occur in the course of, the applicant's employment. *Royall v. Industrial Commission,* 106 Ariz. 346, 476 P.2d 156 (1970). The term "arising out of" is said to refer to the origin or the cause of the injury, while "in the course of" refers to the time, place and circumstances of the accident in relation to the employment. *Peter Kiewit Sons' Company v. Industrial Commission,* 88 Ariz. 164, 354 P.2d 28 (1960). Although not clearly stated by petitioners, we understand petitioners' argument to be that the injury did not occur "in the course of" respondents' employment.

Petitioners correctly assert that the appellate courts of Arizona have never had occasion to directly address the issue of compensability where an employee has been injured after normal working hours while engaging in *educational* pursuits arranged by the employer. Petitioners assert the principle of law that an employee who undertakes educational or training programs which incidentally enhance his proficiency in his work, generally does so primarily to benefit himself, and injuries sustained in the course of such activities are not compensable. In support of this proposition, petitioners quote from 1A *Larson's Workmen's Compensation Law,* § 27.31(a), at 5–281 to 5–282:

> [S]elf-improvement is primarily the employee's own concern; obviously the ambitious clerk who is burning the midnight oil studying to become an accountant cannot expect workmen's compensation if his lamp blows up.

Petitioners, however, overlook the next sentence which states:

> In some situations, however, it may be found that, either by the contemplation of the contract or by custom, the educational activity is part of the employment. *Id.* at 5–282.

In addition, Professor Larson's treatise subsequently states:

> Employment connection may be supplied by varying degrees of employer encouragement or direction. . . . Connection with the employment may also be bolstered by the showing of a specific employer benefit, as distinguished from a vague and general benefit, as when the attendance of an automobile mechanic at an examination given by the manufacturer permitted the dealer to advertise "factory-trained mechanic." Id. § 27.31(c), at 5–293 to 5–296.

The two factors listed by Larson, i.e., employer involvement and employer benefit, are among the factors listed in the course of employment test set forth by this court in *Truck Insurance Exchange v. In-*

---

1. Respondent Butler could not remember anything that happened before the accident. Therefore, both respondents relied on the testimony of Respondent Webb.

*dustrial Commission,* 22 Ariz.App. 158, 524 P.2d 1331 (1974). In that case, we stated the relevant factors as being: "Did the activity inure to the substantial benefit of the employer? ... Was the activity engaged in with the permission or at the direction of the employer? ... Did the employer knowingly furnish the instrumentalities by which the activity was to be carried out? ... Could the employee reasonably expect compensation or reimbursement for the activity engaged in? ... Was the activity primarily for the personal enjoyment of the employee?" *Id.,* 22 Ariz. App. at 160, 524 P.2d at 1333.

The administrative law judge explicitly recognized the above tests in his findings and then applied them in finding of fact number 6 as follows:

> Whether or not mandatory language was used, it is clear that the symposium was for the primary benefit of the employer by increasing the employees' skills; that the attendance in Phoenix made the trip necessary; and that the attendance was authorized and permitted by the employer. These facts constitute sufficient work connection to bring the auto accident and injuries sustained within the course and scope of the applicants' employment with the defendant employer.

Thus, the administrative law judge found that the first two tests were met and, inferentially, that the last test was also met. He then based his decision upon those findings.

The thrust of petitioners' argument on review is that educational activities, as a class, are primarily for the benefit of the employee, rather than for the employer. We do not, however, think such a broad generalization can be drawn from such activities and that each case must be determined on its own facts.

█ In the case at bar, we find sufficient evidence that the seminar training was reasonably, substantially, and indeed primarily, for the benefit of the employer. The direct and specific benefit to the company clearly appears from the testimony of Mr. Crockett:

[By Mr. McLaws]

Q. All right. The purpose of the seminar was to educate mechanics in ways to do their job better?

A. [Mr. Crockett] Yes, sir.

Q. There were people that would lecture, that would have illustrations or movies or any number of educational helps there—

A. Yes, sir.

Q. —to help the employees. Is that true?

A. Yes, sir.

Q. Would an employee that would attend the seminar, would he be rated in your organization in any manner for having attended such a seminar over an employee that didn't attend such a seminar?

A. Well, when you got new types of equipment out, especially on the mixers, I took a lot of them to them. They were new styles and I didn't have anybody there myself to work on them, so I took George Webb and I think Dave Butler at the time, so I had somebody else to rely on to do some repair work on them when I didn't have the time.

Q. So Johnson-Stewart had equipment that needed special care and attention, and would these employees that were skilled in taking care of this certain type of equipment that the seminar would certainly help with; is that true?

A. I feel it benefits the company—

Q. All right.

A. —in sending these men to it, on new equipment.

\*    \*    \*    \*    \*    \*

Q. so it was a direct benefit to Johnson-Stewart if the mechanics attended the seminar; is that true?

A. Yes, sir.

There was absolutely no testimony that the seminar would benefit the respondents in seeking other employment or in obtaining a better job within the company. We con-

clude, therefore, that respondents' ability to repair the machinery used by their employer was an "integral part of the Employer's business plan". *See Lawrence v. Industrial Commission*, 78 Ariz. 401, 404, 281 P.2d 113, 115 (1955). Indeed, under the authority of *Lawrence*, such a plan would itself be sufficient for compensation.[2]

◼ Petitioners imply, however, that educational activities can benefit either the employer or the employee, but not both. We disagree. Even if there were evidence in the record that the employees received a substantial personal benefit from the training, the evidence that there was a substantial benefit to the employer is sufficient to support compensability. Where an injury is suffered by an employee performing an act for the mutual benefit of the employer and the employee, such injury is compensable if, in fact, it occurs in the course of employment and arises out of the employment. A.R.S. § 23–1021. *See, e.g., Westinghouse Electric Corporation v. Department of Labor and Industries*, 25 Wash.App. 103, 604 P.2d 1334 (1980) Aff'd. 94 Wash.2d 875, 621 P.2d 147 (1980); 99 C.J.S., Workmen's Compensation, § 221 at 730–32.

In *Blair v. Shaw*, 171 Kansas 524, 233 P.2d 731 (1951), the survivors of decedent mechanic employees filed a claim for death benefits. The record showed that General Motors Corporation gave an annual examination for automobile mechanics employed in various Chevrolet agencies. A mechanic passing the written test received a certificate, which was commonly displayed in the shop where the employee worked. Several Chevrolet employees died in an auto accident occurring on their way home after taking the examination. The court noted that:

It is generally recognized that a mechanic who has passed these tests is better able to secure employment, and, at the same time, the employer is thus able to adver-

tise that it has "factory-trained mechanics."

*Id.* at 525, 233 P.2d at 732.

The court then went on to state:

It is true that in passing the examination benefit would accrue to the mechanic, but it is also true that it resulted in considerable benefit to the employer. In this day and age such matters are of common knowledge.

*Id.* at 528, 233 P.2d at 734.

The court concluded that decedents sustained their fatal injuries while engaged in the course of their employment. While the facts *sub judice* are slightly different than in *Blair*, we find the reasoning in *Blair* helpful. The award *sub judice* is supported by reasonable evidence that the employer was benefited by respondents' presence at the seminar.

◼ Petitioners' second argument is that mere authorization or permission by the employer to attend the seminar is not sufficient to support compensation. This argument appears to be premised upon petitioners' first argument, which we have rejected above. However, we do not say that benefit to the employer alone would sustain the finding of compensability here. We do not think compensability may rest solely upon the fact that an employer, who does not sponsor, approve or urge employee participation in an activity, merely receives some benefit from the activity. As stated in *Tally v. J.J. Newberry Company*, 30 A.D.2d 898, 899, 291 N.Y.S.2d 950, 952 (1968):

There must be at least some action on the part of the employer to connect the trip to employment, some sponsorship, some approval, some employer action must be present.

◼ In the instant case, the administrative law judge specifically found that the activity was authorized or permitted by the employer. Petitioners do not contest this finding. From the record it is clear that

2. The *Lawrence* Court held that where claimant was injured returning from a Tucson luncheon held for the winners of the sales contest, involving the employer, that there was no need to prove compulsion for claimant to attend since the luncheon was part of the business plan.

the respondents were at least strongly urged to attend the seminar. We hold that considering the evidence in its totality, there is sufficient indicia of employment-related activity to support the finding that the respondents sustained their injuries while in the course of their employment. *See Lawrence v. Industrial Commission, supra;* Annot. 47 A.L.R.3d 566.

The cases cited by petitioners are inapplicable to the case at bar. In *Hildebrand v. McDowell Furniture Company,* 212 N.C. 100, 193 S.E. 294 (1937), the employee of a furniture factory accompanied his supervisor in traveling to a furniture exposition. In that case, the exposition had nothing to do with the employee's job. In the case at bar, the seminar taught respondents to repair machinery that was used by the employer, certainly an integral part of the respondents' jobs. In *Whitely v. King Radio Corporation,* 190 Kansas 439, 375 P.2d 593 (1962), the employer was engaged in the business of manufacturing and developing aircraft radio equipment. The employee was a design engineer. The employer indicated that it might be desirable for the company from the standpoint of prestige if the engineers were aircraft pilots themselves; however, the specifications for design engineers did not require that they be pilots and becoming a pilot was not a condition of employment. The claimant was killed in an airplane accident while taking flying lessons paid for by the employer. The Kansas Supreme Court affirmed the award and held that the accident was not a compensable event because, *inter alia,* flying was not a requirement or a condition of his job. In the case at bar, knowing how to properly maintain and repair machinery used by the employer was certainly a requirement of respondents' job. *Atkison v. Industrial Commission,* 26 Ariz.App. 6, 545 P.2d 968 (1976), involved the drowning death of an employee during a picnic outing sponsored by the employer. The activity was clearly a recreational and social activity. Although the dinner and drinks were provided in the seminar, in the case at bar, petitioners have not contended that the seminar was a recreational or social activity. Ordinarily, in the recreational and social activity cases, the employer does not derive a substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale. *See* 1A *Larson's Workmen's Compensation Law,* § 22.00 at 5–71; Annot. 47 A.L.R.3d 566. In these cases, because the recreation or social activity is not a direct benefit to the employer, the courts have focused on whether the employer has directly or subtly compelled the employee to attend a recreational or social activity. If he has, the employer has expanded the employment such as to include the social and recreational activity. *See Larson, supra,* § 22.22 at 5–83 to 5–84; *Lawrence v. Industrial Commission, supra.*

The award is affirmed.

HAIRE and CONTRERAS, JJ., concur.