928 P.2d 718

**Reneé Michelle ORTIZ and Joe Manuel Ortiz, wife and husband, Plaintiffs–Appellants,**

v.

**Jeremy CLINTON, Defendant–Appellee.**

**No. 1 CA–CV 95–0559.**

Court of Appeals of Arizona, Division 1, Department D.

Nov. 12, 1996.

Reconsideration Denied Dec. 16, 1996.

Robbins, Shumway & Foreman by G. Lynn Shumway, Phoenix, for Plaintiffs–Appellants.

Doyle, Appel & Shook by Marc A. Appel, Phoenix, for Defendant–Appellee.

## OPINION

CHRISTOPHER M. SKELLY, Judge.[1]

This appeal addresses whether an employee who was intoxicated while driving on the job and who failed to heed his co-worker's order to stop the vehicle was acting outside the scope of his employment. We hold that the trial court correctly concluded that the employee was within the scope of his employment and that the co-worker's exclusive remedy against the employee is workers' compensation benefits.

## FACTS AND PROCEDURAL HISTORY

Appellant Reneé Ortiz and Appellee Jeremy Clinton worked for Hozhoni Foundation for the Handicapped, Inc. ("Hozhoni"). Hozhoni provides homes and full-time care for individuals with developmental disabilities ("residents"). Ortiz was a weekend home manager for Hozhoni, and Clinton was a residential aide in the home Ortiz managed.

On August 21, 1993, Ortiz and Clinton took three residents of the home on a trip in a Hozhoni-owned van. During the trip, Ortiz and Clinton consumed three quarts of beer

---

1. Christopher M. Skelly, Judge of the Superior Court of Maricopa County, was authorized by the Chief Justice of the Arizona Supreme Court to participate in this appeal pursuant to Ariz. Const. art. VI, § 3.

and one-half of a fifth of tequila. They returned to the home for about an hour before deciding to take the residents to dinner, which Hozhoni employees are encouraged to do.

On the way to the restaurant, Clinton began speeding. Ortiz told Clinton three times to stop, but he refused. Clinton then attempted to pass another car and lost control. The van rolled over into a drainage ditch, seriously injuring Ortiz.

Hozhoni prohibits employees from drinking on the job or engaging in any other conduct that might endanger the residents. Both Ortiz and Clinton acknowledge that their behavior the day of the accident violated these rules. When asked by a State Compensation Fund investigator, "[D]o you feel that you deserted your employment by drinking as you did?" Clinton answered, "Yes. It was a stupid, stupid thing to do."

Ortiz received workers' compensation benefits. She and her husband also sued Clinton personally. Clinton filed a motion for summary judgment, arguing that the Ortizes' exclusive remedy was workers' compensation benefits pursuant to Arizona Revised Statutes Annotated ("A.R.S.") §§ 23–1021(A) and 23–1022(A) because Clinton was acting within the scope of his employment at the time of the accident. The Ortizes countered, arguing that Clinton had abandoned his employment at the time of the accident because, due to his intoxication, he was not engaged in any act beneficial to Hozhoni and thus was acting outside the scope of his employment.

The trial court granted Clinton's motion for summary judgment, agreeing that the workers' compensation statute barred the Ortizes' lawsuit because Clinton, pursuant to the *respondeat superior* doctrine, was acting within the scope of his employment at the time of the accident. Neither his intoxication nor his failure to follow Ortiz's instructions to stop took him out of his employment.

Following entry of judgment in favor of Clinton, the Ortizes filed a motion for new trial. The trial court denied the motion, and the Ortizes timely appealed.

## DISCUSSION

The Ortizes raise three issues. First, does evidence of Clinton's intoxication create a question of fact as to whether he was acting within the scope of his employment at the time of the accident and thus preclude summary judgment? Second, did Clinton's failure to obey Ortiz's order to stop driving take him outside the scope of his employment? Third, is Clinton's admission that he deserted his employment by drinking on the job admissible at trial?

Preliminarily, however, the parties disagree about what the phrase "acting in the scope of his employment" means in § 23–1022(A) of the workers' compensation statute. The Ortizes argue that "acting in the scope of his employment" in A.R.S. § 23–1022(A) is narrower than "arising out of and in the course of his employment" in § 23–1021(A), and that "acting in the scope of his employment" should, consistent with workers' compensation law generally, be construed so as to protect the injured worker and give the worker every benefit to which he is rightly entitled. Clinton argues that § 23–1022(A) incorporates the *respondeat superior* doctrine used in tort cases.

### A. Test to Determine Scope of Employment

Section 23–1021(A) entitles an employee to workers' compensation for injuries suffered in an accident "arising out of and in the course of his employment." The term "arising out of" refers to the origin or cause of the injury, and "in the course of" refers to the time, place, and circumstances of the accident in relation to the employment. *Scheller v. Industrial Comm'n,* 134 Ariz. 418, 420, 656 P.2d 1279, 1281 (App.1982) (citing *Peter Kiewit Sons' Co. v. Industrial Comm'n,* 88 Ariz. 164, 354 P.2d 28 (1960)). Ortiz was awarded workers' compensation benefits under this section, and the parties do not challenge that award here.

The issue here is whether these benefits were the Ortizes' exclusive remedy against Clinton. Workers' compensation benefits are an employee's exclusive remedy for injuries suffered on the job against the employer "or any co-employee acting in the scope of his

employment...." A.R.S. § 23–1022(A). This language differs from that in § 23–1021(A). While we have not previously analyzed the linguistic differences in these two provisions before, the California Supreme Court has interpreted two very similar statutes. *See Saala v. McFarland,* 63 Cal.2d 124, 45 Cal.Rptr. 144, 403 P.2d 400 (1965) (en banc). California law provided compensation to employees for any injuries "arising out of and in the course of the employment." *Id.* at 145, 403 P.2d at 401 (citing Cal. Lab.Code § 3600). The right to such compensation was the exclusive remedy for an employee's injury "against any other employee of the employer acting within the scope of his employment." *Id.* (quoting Cal. Lab.Code § 3601) (emphasis omitted). The *Saala* court addressed whether the phrases "acting within the scope of his employment" and "arising out of and in the course of the employment" had the same meaning. *Id.* at 146, 403 P.2d at 402.

It concluded that they did not, reasoning that the legislature intended to exempt from civil liability only a co-employee's actions that were within the scope of employment, rather than those arising out of and in the course of the employment. *Id.* at 147, 403 P.2d at 403. It noted that although the two phrases were sometimes used interchangeably, scope of employment was a narrower area of employee conduct than "arising out of and in the course of the employment." *Id.* at 147 n. 3, 403 P.2d at 403 n. 3.

Although this court has not gone so far as to hold that every injury to an employee attending to his duties and within the course of his employment is compensable, it has, in many cases, upheld the allowance of compensation for injuries arising out of acts *not strictly within the scope of employment:* returning from lunch ...; drinking wine because of indisposition ...; smoking....

*Id.* (quoting *Pacific Employers Ins. Co. v. Industrial Accident Comm'n,* 26 Cal.2d 286, 158 P.2d 9, 13–14 (1945) (citations omitted in original)). Noting that the legislature could have used "arising out of and in the course of employment" in § 3601 if it had intended that standard for co-employee immunity, the

*Saala* court concluded that the phrase "acting within the scope of his employment" should be construed so as not to extend the immunity beyond *respondeat superior* applications. *Id.* at 147–48, 148 n. 5, 403 P.2d at 403–04, 404 n. 5.

We too have noted that workers' compensation law and *respondeat superior* doctrine differ in application. In *Robarge v. Bechtel Power Corp.,* 131 Ariz. 280, 640 P.2d 211 (App.1982), we noted:

Workmen's compensation benefits turn solely upon whether the employee was injured while performing an activity related to his job—and "relatedness" is usually a function of benefit to the employer.... [T]he narrower concept, "scope of employment," has long been tied to the employer's right to control the employee's activity at the time of his tortious conduct....

*Id.* at 282, 640 P.2d at 213 (quoting *Luth v. Rogers & Babler Constr. Co.,* 507 P.2d 761, 764 (Alaska 1973)).

The Ortizes' case is not a typical workers' compensation "in the course of employment" case, *see, e.g., Embree v. Industrial Comm'n,* 21 Ariz.App. 411, 520 P.2d 324 (1974), or a *respondeat superior* "scope of employment" tort case, *see, e.g., Robarge,* 131 Ariz. 280, 640 P.2d 211. The Ortizes are not trying to establish here that Ortiz is entitled to workers' compensation benefits. Nor are they trying to prove that Hozhoni is vicariously liable for Clinton's acts. Instead, the Ortizes are trying to show that Clinton was not acting within the scope of his employment and therefore is not protected from liability under § 23–1022(A).

*Delbridge v. Salt River Project Agricultural Improvement & Power District,* 182 Ariz. 46, 893 P.2d 46 (App.1994), is helpful to an understanding of the issue presented here. There, an injured pre-apprentice lineman sued his employer for injuries he received during an employment training course. After the accident, SRP began sending workers' compensation benefits to Delbridge. He refused them and instead filed a civil suit. *Id.* at 48–49, 893 P.2d at 48–49. SRP moved for summary judgment on the basis that Delbridge had suffered injuries arising out of and in the course of his employment and thus

Delbridge's sole remedy was workers' compensation. The trial court granted the motion. *Id.* On appeal, this court framed the issue as follows: "[I]f Delbridge's fall arose out of *and* occurred in the course of his employment, his exclusive remedy is workers' compensation benefits." *Id.* at 50, 893 P.2d at 50.

In determining whether Delbridge's injuries occurred "in the course of" his employment, the court adopted the test from *Johnson Stewart Mining Co. v. Industrial Comm'n,* 133 Ariz. 424, 652 P.2d 163 (App. 1982), a workers' compensation case. The test considers a number of factors:

> Did the activity inure to the substantial benefit of the employer? ... Was the activity engaged in with the permission or at the direction of the employer? ... Did the employer knowingly furnish the instrumentalities by which the activity was to be carried out? ... Could the employee reasonably expect compensation or reimbursement for the activity engaged in? ... Was the activity primarily for the personal enjoyment of the employee?

*Delbridge,* 182 at 51, 893 P.2d at 51 (quoting *Johnson,* 133 Ariz. at 427, 652 P.2d at 166).

This case is, of course, different from *Delbridge.* Here, the Ortizes filed suit not against the employer, Hozhoni, but against co-employee Clinton. Thus, the question is not whether Ortiz was in the course of her employment (she clearly was), but whether Clinton was in the scope of his employment.

We agree with the trial court and the California Supreme Court in *Saala* that the scope of employment test from *respondeat superior* law applies in determining whether the exclusive remedy provisions of § 23–1022(A) preclude an injured worker from suing a co-worker. An employee's conduct is "within the scope of employment if it is of the kind the employee is employed to perform, it occurs substantially within the authorized time and space limit, and it is actuated at least in part by a purpose to serve the master." *Smith v. American Express Travel Related Serv. Co.,* 179 Ariz. 131, 135, 876 P.2d 1166, 1170 (App.1994), *cert. denied,* 180 Ariz. 411, 885 P.2d 99 (1994) (quoting *Love v. Liberty Mut. Ins. Co.,* 158 Ariz. 36, 38, 760

P.2d 1085, 1087 (App.1988)). The employee is in the scope of employment when "performing a service in furtherance of [the] employer's business." *Ohio Farmers Ins. Co. v. Norman,* 122 Ariz. 330, 332, 594 P.2d 1026, 1028 (App.1979) (citation omitted).

■ Although the *respondeat superior* doctrine applies, principles arising from workers' compensation cases may also be invoked in *respondeat superior* cases when they are appropriate. *See, e.g., Robarge,* 131 Ariz. at 283, 640 P.2d at 214; *Anderson v. Gobea,* 18 Ariz.App. 277, 280, 501 P.2d 453, 456 (1972). This is particularly true where, as here, *respondeat superior* is applied in a case involving a workers' compensation statute. The test set forth in *Delbridge* to determine whether a claimant was in the course of employment is helpful in determining whether a co-employee was in the scope of employment. *See Delbridge,* 182 Ariz. at 51, 893 P.2d at 51. Accordingly, we view the issues before us under *respondeat superior* law while also considering workers' compensation principles when applicable.

### B. Was Clinton Acting Within the Scope of His Employment?

When material facts are not in dispute, a trial court may decide as a matter of law whether an employee was acting in the scope of employment at the relevant time. *See Duncan v. State,* 157 Ariz. 56, 60–61, 754 P.2d 1160, 1164–65 (App.1988). Here, the parties agree that driving the residents to meals was one of Clinton's job duties, that he was driving while intoxicated, and that Ortiz told him to stop the van shortly before the accident. Based on these facts, we conclude that under the *respondeat superior/* scope of employment test, Clinton was acting within the scope of his employment when driving the residents to dinner. Driving the Hozhoni residents to dinner was among the duties Hozhoni employed Clinton to perform and was actuated by a purpose to serve Hozhoni because Hozhoni encouraged its employees to take the residents out for meals.

Applying the *Delbridge* "course of employment" test, the activity also inured to the benefit of Hozhoni; Hozhoni provided the

van involved in the accident; Clinton was on duty and thus could reasonably expect compensation for the activity he was engaged in; and driving the residents to meals was not primarily for the personal enjoyment of Clinton. *See Delbridge,* 182 Ariz. at 51, 893 P.2d at 51 (quoting *Johnson,* 133 Ariz. at 427, 652 P.2d at 166).

The Ortizes argue, however, that even if Clinton was performing a job duty, his intoxication took him outside the scope of his employment because it caused him to abandon his employment. We disagree. A wrongful act committed by an employee while acting in his employer's business does not take the employee out of the scope of employment, even if the employer has expressly forbidden the act. *See Ohio Farmers,* 122 Ariz. at 331–32, 594 P.2d at 1027–28 (citations omitted). The question is whether at the time the injury occurred the employee was performing a service in furtherance of his employer's business, not whether it was done in a manner exactly as the employer prescribed. *Id.* at 332, 594 P.2d at 1028 (citation omitted).

Similarly, under workers' compensation law, if the employee's misconduct violates a rule relating to how the employee should perform his duties, the violation does not remove the employee from the course of his employment. *Goodyear Aircraft Corp. v. Gilbert,* 65 Ariz. 379, 383, 181 P.2d 624, 627 (1947); *Burnett v. Industrial Comm'n,* 158 Ariz. 548, 550, 764 P.2d 33, 35 (App.1988). Only if the rule limits the "scope, ambit, or sphere of work which the employee is authorized to do," does the violation take the employee outside the course of his employment. *See Goodyear,* 65 Ariz. at 383–84, 181 P.2d at 627 (citation omitted); *see also Burnett,* 158 Ariz. at 550, 764 P.2d at 35.

Hozhoni's rules against drinking prohibited employees from working in an impaired or intoxicated condition. These rules did not change the scope of Clinton's employment—his job duties—but instead dictated the manner—sober—in which he was to perform his duties. Under these principles, Clinton remained within the scope of his employment even though his conduct violated Hozhoni rules. *See Goodyear,* 65 Ariz. at 383–84, 181 P.2d at 627; *Burnett,* 158 Ariz. at 550, 764 P.2d at 35.

Whether intoxication constitutes an abandonment of employment is also addressed in workers' compensation cases. In *Embree v. Industrial Commission,* the court stated that intoxication constitutes abandonment of employment when the intoxication is such that the worker can "no longer pursue his employment," can "no longer follow his employment," or when he is "incapacitated." 21 Ariz.App. at 413, 520 P.2d at 326 (quoting Larson on Workmen's Compensation Law § 34.20). In other words, the employee would be unable to perform the duties of his employment due to intoxication. *Id.; see also Producers Cotton Oil v. Industrial Comm'n,* 171 Ariz. 24, 25, 827 P.2d 485, 486 (App.1992) (intoxication precludes compensation award only when employee cannot perform his job duties such that he can be said to have abandoned his employment). Whether the intoxication is so severe as to constitute abandonment of employment must be determined from the facts of each case. *Id.* (citing *Embree,* 21 Ariz.App. 411, 520 P.2d 324).

In this case, we can say as a matter of law that Clinton was not so intoxicated that he abandoned his employment.[2] Despite his intoxication, he was able to help the residents into the van. He was able to drive the van to the restaurant, although during part of the trip he did so recklessly. He was not incapacitated, and he was able to perform

---

2. The Ortizes contend that intoxication's effect on a person's mental state is a question of fact, citing *Republic Insurance Co. v. Feidler,* 178 Ariz. 528, 532, 875 P.2d 187, 191 (App.1993). *Republic* does not apply here. The question in *Republic* was whether damages from an insured's aggravated assault were excluded from coverage by the policy's intentional act exclusion. The court concluded that a genuine issue of material fact existed as to whether the insured was so intoxicated that he was incapable of forming an intent to injure the victim. In the Ortizes' case, however, Clinton's mental state or formation of intent is not at issue. Whether a person acted in the scope of employment is not a question of subjective intent, but instead is determined by an objective test.

his job duties despite his intoxication; therefore, he did not abandon his employment so as to be outside the scope of his employment.

■ The Ortizes also claim that Ortiz's directives to Clinton to pull over to the side of the road and stop the vehicle limited the scope of his employment such that he was outside the scope of his employment when he continued driving and wrecked the van.

Again, we disagree. Section 229 of the Restatement (Second) of Agency concerns the kinds of conduct that are within the scope of employment. Illustration 2 to Comment a is much like the situation before us. There, P employs A as a general farm hand and directs A not to do any mowing until instructed to do so. In P's absence, and thinking that the grass should be cut immediately, A mows the grass. "If the cutting of grass is within the duties that A is employed to perform, the fact that P forbids cutting temporarily does not prevent it from being within the scope of A's employment." RE-STATEMENT (SECOND) OF AGENCY § 229 cmt. a (1958) (hereinafter RESTATEMENT (SECOND)).

Here, driving the residents to dinner was within the duties Clinton was employed to perform. The fact that Ortiz temporarily forbade Clinton to drive did not prevent driving from being within the scope of Clinton's employment. Ortiz's directive affected the manner in which Clinton was to drive—he was not to drive recklessly and while drunk. It did not change, however, the overall scope of his employment duties, which included driving residents to meals.

The Ortizes also claim, relying on *Olson v. Staggs–Bilt Homes, Inc.,* 23 Ariz.App. 574, 534 P.2d 1073 (1975), that Clinton was outside the scope of his employment because he was using the van for his own amusement. Ortiz testified that when she told Clinton to stop the van, he refused and responded that he always wanted to be a race car driver. These facts, however, are not analogous to those in *Olson.*

In *Olson,* a service station attendant was wounded when a gun carried by a security

guard accidentally discharged. 23 Ariz.App. at 575, 534 P.2d at 1074. The security guard was employed by a local homebuilder and was at the gas station to fill his patrol car. The accident occurred when the guard handed the gun to the attendant either during horseplay or for the attendant to inspect. *Id.* The court held that the guard's actions were outside the scope of his employment because he had no reason to draw the gun at the gas station and was in no way doing so as part of his job for the homebuilder. The court refused to find the homebuilder liable under the *respondeat superior* doctrine. *Id.* at 577, 534 P.2d at 1076.

In contrast, driving the residents to dinner in the Hozhoni van *was* among Clinton's job duties. Even though Clinton may have been speeding for his own enjoyment, his reckless driving occurred while he was performing a task that was within the scope of his employment. Unlike the guard in *Olson,* Clinton's actions were not taken solely for his own benefit but were incidental to the job he was performing for his employer.

■ The Ortizes also claim that Clinton's criminal conduct [3] took him outside the scope of his employment. *See* RESTATEMENT (SECOND) §§ 229(2)(j), 245 cmt. f; *Smith,* 179 Ariz. 131, 876 P.2d 1166. Section 229(2) of the Restatement (Second) provides that unauthorized conduct may be within the scope of employment if it is similar to or incidental to authorized conduct. One factor to consider is whether the act is seriously criminal. RESTATEMENT (SECOND) § 229(2)(j). "An act may be within the scope of employment although consciously criminal or tortious." *Id.* § 231. For example, "[a] chauffeur driving on an errand for his master, who knowingly ... exceeds the speed limit, is still acting within the scope of employment.... [A] gardener using a small stick in an assault upon a trespassing child to exclude him from the premises may be found to be acting within the scope of employment." *Id.* § 231 cmt. a. Shooting the trespassing child or murdering a business competitor, however,

---

**3.** As a result of the accident and injury to Ortiz, Clinton pled guilty to aggravated assault, a class

3 felony.

would not be within the scope of employment. *Id.*

Comment f of section 245, provides in part, "The fact that the servant acts in an outrageous manner or inflicts a punishment out of all proportion to the necessities of his master's business is evidence indicating that the servant has departed from the scope of employment in performing the act." As an illustration, the driver of an ice wagon who throws a piece of ice at annoying children or a bus driver who cuts off a competitor bus, forcing it into a ditch, may be found to be acting in the scope of employment. Where a train switchman shoots a trespassing four-year-old child, however, the act is so outrageous that it is not within the scope of his employment. *Id.*

Based on these principles, we can say as a matter of law that, although the consequences to Ortiz were severe, the acts of driving while intoxicated and speeding do not rise to the level of "outrageousness" that shooting a trespassing child or murdering a business competitor does.

The Ortizes' reliance on *Smith* is similarly misplaced. In *Smith*, a manager sexually harassed and assaulted a female employee whom he did not directly supervise. The court found that his actions were not expressly or impliedly authorized as part of his job duties, his conduct was not incidental to his employment, and he did not perform a service in furtherance of his employer's business when he harassed and assaulted Smith. 179 Ariz. at 136, 876 P.2d at 1171. The manager was not supervising Smith or performing any employment task when he harassed and assaulted her. In contrast, Clinton was engaged in a job duty when his criminal conduct occurred. His driving while intoxicated and speeding were incidental to the employment task he was performing. Therefore, we conclude that Clinton's criminal acts did not take him outside the scope of his employment.

#### C. Use of Clinton's Admission

The Ortizes argue that Clinton's admission that he deserted his employment by drinking on the job should be admitted at trial. Be-

cause we affirm summary judgment, we need not reach this issue.

### CONCLUSION

In summary, we conclude that neither Clinton's intoxication nor Ortiz's order that he stop driving took him outside the scope of his employment. Therefore, under A.R.S. § 23–1022(A), Ortiz's recovery of workers' compensation benefits is her exclusive remedy against Clinton. Accordingly, we affirm the trial court's entry of judgment in favor of Clinton.

GARBARINO, P.J., and GRANT, J., concur.