IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| MANU DUBE, | ) | 2 CA-CV 2007-0084 |
| | ) | DEPARTMENT A |
| Plaintiff/Appellant, | ) | |
| | ) | **O P I N I O N** |
| v. | ) | |
| | ) | |
| CHANDRA S. DESAI and PATRICIA | ) | |
| DESAI, husband and wife, | ) | |
| | ) | |
| Defendants/Appellees. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C 20044924

Honorable Deborah Bernini, Judge

AFFIRMED

Raven, Awerkamp & Clancy, PC
  By Don Awerkamp and Ivelisse Bonilla-Torrado                    Tucson
Attorneys for Plaintiff/Appellant

Sandra S. Froman, P.L.C.
  By Sandra S. Froman                                          Tucson
Attorney for Defendants/Appellees

H O W A R D, Presiding Judge.

¶1 Appellant Manu Dube appeals the grant of summary judgment in favor of appellees Chandra S. Desai and Patricia Desai in Dube's tortious interference action. He claims genuine issues of material fact exist concerning whether Desai acted in the scope of his employment with the University of Arizona, precluding summary judgment based on his failure to file a timely notice of claim under A.R.S. § 12-821.01. Finding no error, we affirm.

## Facts and Procedural History

### A. Background Facts

¶2 We view the facts in the light most favorable to the party opposing summary judgment and draw all reasonable inferences arising from the evidence in favor of that party. *Prince v. City of Apache Junction*, 185 Ariz. 43, 45, 912 P.2d 47, 49 (App. 1996). In reviewing the trial court's decision, we consider only the evidence presented to the trial court when it addressed the motion for summary judgment. *Brookover v. Roberts Enters., Inc.*, 215 Ariz. 52, ¶ 8, 156 P.3d 1157, 1160 (App. 2007).

¶3 In 1998, Dube transferred to the University of Arizona to continue his post-graduate studies in engineering mechanics. Chandra Desai served as Dube's doctoral advisor, research advisor, and course professor, as well as an academic advisor for Dube's technical work in his Curricular Practical Training.

¶4 Under the name of C. Desai, Inc., Chandra Desai marketed certain engineering codes he had developed. Desai hired Dube to work on a contract for a corporate client of

2

C. Desai, Inc. The client paid C. Desai, Inc. for the work, and C. Desai, Inc. paid Dube. Dube signed a consultant agreement. Because Dube was an international student, Desai submitted information so that the University could secure immigration work authorization for Dube.

¶5 Part of Dube's assignment as a consultant was to use a "yield function model," developed and licensed by Desai through C. Desai, Inc., to perform work for the client. Dube alleges that, while working with this model, he detected problems with it. Dube brought the problems to Desai's attention and proposed solutions. According to Dube, Desai "reacted with hostility" and was dismissive of Dube's suggestions. Dube then decided to focus his dissertation in a way that he believed would "undermine" Desai's yield function model. Dube avows that Desai was not supportive of Dube's dissertation plan and attempted to take credit for the new equation that Dube had developed.

¶6 In the fall of 2002, Dube requested that Desai be removed from his dissertation committee, alleging that Desai was making improper requests for acknowledgment of credit for Dube's work and was attempting to misappropriate Dube's work for himself. According to Dube, Desai was subsequently removed from the dissertation committee at a meeting held on November 4, 2002. After this meeting, Desai no longer had decision-making power with respect to Dube's dissertation, but he was still to have some input on Dube's citations.

**B. Facts Relevant to Appeal**

3

¶7 In his "Reply to Defendants' Statement of Facts," Dube stated that "at the time of the actions for which relief is sought in the Amended Complaint, Desai was no longer Dube's advisor." Also, in his "Opposition to Defendants' Motion for Summary Judgment," Dube argued he had proffered facts that show Desai was acting for his own profit when, "after Desai was removed from Dube's dissertation committee, Desai continued to interfere with Dube's obtaining his Ph.D., getting his dissertation published and going on with his career." Accepting Dube's assertion that Desai was removed as his advisor on November 4, 2002, we review the following evidence of Desai's actions after that date:[1]

1.   On November 18, 2002, Desai sent a letter to the Dean of Students, stating that Desai was concerned that Dube had engaged in disruptive actions. A copy of this letter was sent to the University police department and two other University administrators. This letter was sent on University letterhead and was signed "Chandrakant S. Desai, Regents' Professor."

2.   Also on November 18, 2002, Desai sent a memorandum to Richard P., the University's Vice President for Research and Graduate Studies. This memorandum was a response to a memorandum from Richard P. informing Desai that "[i]ndividuals ha[d] expressed concern . . . with regard to companies [Desai] may [have] be[en]

_____

[1]This evidence is taken from the statement of facts that Dube submitted to the trial court. At oral argument, Dube suggested that ¶¶ 88-113 of this statement contain the facts that support his claim for interference with his business relationships or expectancies. The court has reviewed these paragraphs and has included all facts that could possibly constitute admissible evidence of interference by Desai.

4

operating . . . and the employment of students in those companies." In Desai's response, he asserted he had "fulfilled all the requirements" for engaging in his consulting work, including obtaining proper permission when employing foreign students. This memorandum was sent on University letterhead. The caption stated it was from "Chandrakant S. Desai, Regents' Professor, CEEM Department."

3. On November 22, 2002, the chairperson of Dube's dissertation committee sent an e-mail to Dianne H., Associate Dean of the Graduate College, expressing concern over Desai's accusations and demands regarding Dube's dissertation. The chairperson stated that Desai was questioning the quality of Dube's dissertation and was objecting to the faculty members who had been proposed to replace Desai on Dube's committee.

4. On May 12, 2003, Desai sent a memorandum to Dube's committee and copied other administrators. In this memorandum, Desai asked that he be given a draft copy of Dube's dissertation so he could check for proper acknowledgments and citations. Desai expressed concern over the quality of Dube's dissertation and his purported failure to meet the requirements of a research sponsor. Desai also asserted that Dube could not claim ownership of the equation for which Dube had developed a modification because the equation itself was the product of many years' work and contributions by Desai and many of his students. This memorandum was printed on

University letterhead. The caption indicated it was from "Chandrakant S. Desai, Regents' Professor."

5. On May 16, 2003, Desai sent an e-mail to Dianne H. in response to an e-mail she had written. Dianne's original e-mail stated that a draft of Dube's dissertation had been sent to Desai, that she and other administrators would carefully review Desai's written comments, and that they would not award the degree unless Dube properly acknowledged Desai's work. She also stated that another person would ensure the sponsor's requirements were met. She asked that Desai not have direct contact with Dube's committee. Desai's reply e-mail indicated he had received the draft and would send his comments directly to Dianne H. Desai also expressed concern that there were no "external members" to review Dube's dissertation. These e-mails originated from arizona.edu e-mail addresses.

6. On June 9, 2003, Desai sent a memorandum to Dianne H. and copied other administrators. Desai stated that he had prepared the memorandum in response to a request from Dianne H. that he review Dube's draft dissertation and provide comments. Desai then listed a series of detailed criticisms of Dube's citations and acknowledgments, including a suggestion that Dube had committed plagiarism. Desai also stated that Dube's work did not satisfy the requirements of a research sponsor. This memorandum was printed on University letterhead. The caption stated it was from "Chandra S. Desai, Regents' Professor, CEEM Department."

6

7. On June 25, 2003, Desai sent another memorandum to Dianne H. and copied other administrators. Desai indicated he was responding to a request from Dianne H. for details on his comments in the June 9 memorandum. Desai apparently attached materials to this memorandum and also set forth additional criticisms of both Dube and the dissertation committee. Desai's comments were in part directed at the quality of the dissertation and its reflection on the research by Desai and others at the University. He suggested the dissertation should be reviewed by a committee of external experts. This memorandum was printed on University letterhead. The caption stated it was from "Chandra Desai, Regents' Professor."

8. On January 14, 2006, Desai sent an e-mail from an arizona.edu e-mail address, apparently to another scholar regarding a paper authored by "Dube and Kundu."

## C. Procedural History

¶8 Dube sued Chandra Desai and Patricia Desai, his wife, alleging "Tortious Interference with Business Relationships and/or Expectancies."[2] He claimed that Chandra Desai interfered with Dube's obtaining his Ph.D. and employment. The Desais moved for summary judgment based on the notice-of-claim statute, § 12-821.01, arguing that, during

---

[2]Dube included additional parties in the action but included Patricia Desai only because any judgment might affect the community property interests of both Chandra and Patricia Desai. With respect to the summary judgment at issue in this appeal, the trial court ordered judgment as to Chandra Desai and Patricia Desai only, finding "no just reason for delay." Ariz. R. Civ. P. 54(b). We therefore address only the relevant issues that involve the individual Desai defendants.

7

all relevant times, Chandra Desai was acting within the course and scope of his employment with the state. They relied on § 12-821.01(A), which requires that any claim against a public entity or public employee must be filed with the representative authorized to accept service for that public entity or employee "within one hundred eighty days after the cause of action accrues." It was undisputed that Dube had not complied with the notice-of-claim statute. The trial court found "uncontroverted evidence . . . that all of Mr. Dube's actionable claims [arose] from his relationship with Dr. Desai as his academic advisor" and therefore the Desais were entitled to summary judgment and dismissal of Dube's claim.

## Discussion

¶9 On appeal, Dube argues the trial court erred by granting summary judgment because genuine issues of material fact exist concerning whether Desai was acting within the scope of his employment when he allegedly interfered with Dube's graduation and employment. He contends that only if Desai was acting within the scope of employment is summary judgment based on § 12-821.01 appropriate.

¶10 Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c)(1). A court should grant summary judgment "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d

8

1000, 1008 (1990). We review de novo whether there are any genuine issues of material fact and whether the trial court applied the law properly. *Brookover v. Roberts Enters., Inc.*, 215 Ariz. 52, ¶ 8, 156 P.3d 1157, 1160 (App. 2007). A mere scintilla of evidence or a slight doubt as to whether a material factual dispute exists is not sufficient to overcome summary judgment. *Orme Sch.*, 166 Ariz. at 309, 802 P.2d at 1008. When the material facts are not disputed, a "trial court may decide as a matter of law whether an employee was acting in the scope of employment at the relevant time." *Ortiz v. Clinton*, 187 Ariz. 294, 298, 928 P.2d 718, 722 (App. 1996).

¶11        Although A.R.S. § 12-820(1) was not cited by either party, it defines an employee, for purposes of the notice-of-claim statute, § 12-821.01, as "an officer, director, employee or servant, whether or not compensated or part time, who is authorized to perform any act or service." In *McCloud v. State*, ___ Ariz. ___, ¶ 25, 170 P.3d 691, 699 (App. 2007), we noted that § 12-821.01 "has consistently been applied only to claims arising out of acts by public employees in the scope of their employment." We further observed that an "employee's '[c]onduct falls within the scope [of employment] if it is the kind the employee is employed to perform, it occurs within the authorized time and space limits, and furthers the employer's business even if the employer has expressly forbidden it." *Id.* ¶ 29, *quoting Baker ex rel. Hall Brake Supply, Inc. v. Stewart Title & Trust of Phoenix, Inc.*, 197 Ariz. 535, ¶ 17, 5 P.3d 249, 254 (App. 2000) (alteration in *McCloud*); *see also Love v. Liberty Mut. Ins. Co.*, 158 Ariz. 36, 38, 760 P.2d 1085, 1087 (App. 1988) (conduct within

9

scope of employment if, inter alia, "it is actuated at least in part by a purpose to serve the master"). An employee's improper actions, even those serving personal desires, will be deemed motivated to serve the employer if those actions are incidental to the employee's legitimate work activity. *See State v. Schallock*, 189 Ariz. 250, 258, 941 P.2d 1275, 1283 (1997) (an employee may act within scope of authorized employment when sexually harassing subordinates).

¶12 Dube correctly observed at oral argument that, to prevail on summary judgment, Desai had the burden to show evidence supporting his assertion that he was acting within the "authorized" scope of his employment, thus triggering the notice-of-claim requirement. *See Orme Sch.*, 166 Ariz. at 310, 802 P.2d at 1009. To defeat summary judgment, Dube then had to show evidence creating a genuine issue of fact on this question. *See id.* But, as noted above, when the material facts are undisputed, we may decide as a matter of law whether Desai was acting within the scope of his employment. *See Ortiz*, 187 Ariz. at 298, 928 P.2d at 722.

¶13 The parties do not dispute what Desai did. What they do dispute is whether Desai's actions were motivated, at least partially, to serve Desai's employer. *See Schallock*, 189 Ariz. at 258, 941 P.2d at 1283. Dube contends that a jury could "easily find that [Desai's] interference was in no way motivated by [his] University position." The undisputed facts, taken together with any disputed facts resolved in Dube's favor, do not support this assertion.

10

¶14　　　　Desai first alerted administrators and authorities to his concern over what he alleged to be the disruptive actions of a student, Dube. Almost all of Desai's subsequent actions involved communications relating to the dissertation of that student; were printed on University letterhead or sent to and from University-based e-mail accounts; were directed to other members of the University; and identified Desai as a regents' professor of the University.[3] Dube has not produced any evidence that Desai's job as a University professor did not include commenting on a disruptive student or on a student's dissertation or communicating with other members of the University. In fact, other members of the

---

[3]One exception is the e-mail Desai sent in 2006, which Dube cites as support for his allegation that Desai has interfered with Dube's efforts to publish the research from his dissertation. Dube also cites to an excerpt from Desai's deposition, but the pages that he cites are not included in the attachments to his statement of facts filed with the trial court. Dube was responsible for ensuring the record on appeal contained all documents necessary for us to consider the issues he raises. When the necessary items are omitted, "we assume they would support the court's findings and conclusions." *Baker v. Baker*, 183 Ariz. 70, 73, 900 P.2d 764, 767 (App. 1995). In the e-mail, which is included in the record, Desai does not identify himself as a regents' professor, and it is unclear whether the recipient is a member of the University. The e-mail was sent from a University-based e-mail account. Without additional information, the significance of the e-mail is unclear. Dube has not submitted any evidence that Desai was not "authorized" to communicate with this person. At oral argument, Desai asserted that the 2006 e-mail could not have interfered with publication because Dube's dissertation had already been published by that time. Dube responded that the e-mail interfered with additional publication efforts. But other than this e-mail, there was no admissible evidence offered below by Dube regarding attempted or successful publication. We find at most that this e-mail amounts to a scintilla of evidence suggesting Desai might have been acting outside the scope of his employment and is insufficient to overcome summary judgment. *See Orme Sch.*, 166 Ariz. at 309, 802 P.2d at 1008.

University specifically requested that Desai comment on the dissertation.[4] Thus, his actions were at least incidental to his employment and therefore were motivated in part by a desire to serve his employer. *See Schallock*, 189 Ariz. at 258, 941 P.2d at 1283.

¶15        The sexual harassment analysis in *Schallock* is conceptually analogous to the issue in the present case. In *Schallock*, our supreme court observed that, when a supervisor harasses employees while performing his authorized duties, the harassment can be incidental to his work and thus within the scope of his employment. *Id.* at 258, 941 P.2d at 1283. Even though a supervisor may harass from some personal desire, he commits the harassment in the course and scope of performing his duties, so long as he is authorized to perform those duties. *Id.* In this case, Desai may have had a desire to protect C. Desai, Inc. and may have used his position at the University to advance a personal agenda. But even if this is true, all the actions of which Dube complains were incidental to Desai's work for the University.[5]

---

[4]The only communication that does not refer to Dube by name is the memorandum Desai sent to Richard P. However, this document was on University letterhead, sent to an administrator of the University, and sent in Desai's capacity as a "Regents' Professor." In addition, the subject matter pertains entirely to the issue of compliance with University policy. Dube has offered nothing to suggest Desai was not authorized to write this memorandum.

[5]Dube cites *Demas v. Levitsky*, 738 N.Y.S.2d 402, 409-10 (App. Div. 2002), asserting that the plaintiff there made allegations similar to his own and that the court determined that a professor who takes credit for a student's research for personal fame and recognition is not acting within the scope of his employment for a university. We decline to adopt the reasoning in *Demas* as it is inconsistent with Arizona's case law addressing the issue of motivation to serve the employer's interests.

¶16     At oral argument, Dube correctly noted that the supreme court in *Schallock* found issues of fact that made summary judgment inappropriate. *Id.* at 262-63, 941 P.2d at 1287-88. But here, Dube has failed to produce any evidence showing that Desai's acts were not at least incidental to his job. Therefore, he has failed to raise any issue of fact. *See Ortiz*, 187 Ariz. at 298, 928 P.2d at 722 (court may decide whether conduct within scope of employment as matter of law when material facts undisputed). Dube also cited *E-Z Livin' Mobile Homes, Inc. v. Tommaney*, 27 Ariz. App. 11, 15-16, 550 P.2d 658, 662-63 (1976), for the proposition that use of a principal's stationery is insufficient to create an agency relationship. He claimed therefore that the use of University letterhead is insufficient to place Desai within the scope of his employment. But the evidence presented by Dube involves far more than mere use of the University's letterhead. The evidence shows multiple reciprocal communications between Desai and University administrators about subjects that directly related to Desai's position as a professor at the University. On the other hand, Dube produced no evidence suggesting that Desai's actions were not incidental to his employment.

¶17     Dube argues that to find Desai was acting within the scope of his employment would be tantamount to saying Desai "was employed by the University . . . to tortiously interfere with the academic and employment opportunities of his students." But, in *Schallock*, the supreme court observed that "[t]he relevant purpose to be ascertained is not whether [the supervisor] had authority to harass—no supervisor has that authority—but whether he had authority to run and was running [the employer's] business." *Id*. at 258, 941

13

P.2d at 1283. In the present case, the relevant inquiry is not whether Desai had the authority to commit tortious interference but whether he had the authority to communicate with other members of the University about Dube.

¶18     Dube suggested in his statement of facts filed below that some of Desai's communications were in defiance of Dianne H.'s instructions. The evidence Dube proffered in support of that assertion does not substantiate such an inference. But, even assuming Dube were correct in this regard, the fact that Desai's actions may have displeased his employer or contravened his employer's instructions does not remove him from the scope of his employment. *See Baker*, 197 Ariz. 535, ¶ 17, 5 P.3d at 254 (even expressly forbidden actions may be within scope of employment). To the contrary, the evidence suggests Desai's employer was actively overseeing his actions, reinforcing the conclusion that Desai was acting within his scope of employment. And Dube acknowledges that, after Desai was no longer serving on his dissertation committee, Dianne H. still expected Desai to provide comments on Dube's citations.

¶19     Dube argues that "[a]ny scholar from any University with some expertise on the area can discredit and/or criticize research being performed" and can ask that he be given credit he believes is due for any research. He also contends that "there is no difference" between interference by Desai and interference by an employee of the corporate client who might have learned of Dube's work and tried to appropriate it. But Dube's contentions are

mere conclusory suppositions, which are not supported in the record.[6] And the fact that others could commit the same tort does not mean that Desai was not acting within the scope of his employment when he allegedly committed it. This case does not involve "any scholar" or random employee of another company. It involves a University professor, sending communications on University letterhead or from University-based e-mail accounts to other members of the University, regarding the work of a student with whom that professor had had a formal academic relationship. And the evidence shows the University expected Desai to continue to play some kind of role in the dissertation process even after he was no longer Dube's advisor.

¶20 Dube also contends he has shown that Desai was attempting to mislead the University about C. Desai, Inc. and suggests the only explanation for this subterfuge was that any work for C. Desai, Inc. was not intended to serve the University. Similarly, Dube argues that, because Desai required, as a condition of doing consulting work, that his students sign an agreement releasing to C. Desai, Inc. any codes they might develop, this also proves Desai's work for C. Desai, Inc. was not intended to serve the interest of the University. But the actions Dube complains of as constituting tortious interference do not include Desai's own work or his students' work for C. Desai, Inc. As noted above, Dube asserted that all actions that underlie his claim of interference took place after November 4, 2002. Those

---

[6]In his statement of facts, Dube cited a portion of Desai's deposition as support for the proposition that anyone can submit comments to a dissertation committee. But the testimony cited actually suggests the opposite conclusion.

actions are outlined above and do not involve any releases signed by Dube or any other student with respect to work done for C. Desai, Inc. After November 4, Desai's only action that appears to refer to C. Desai, Inc. is the memorandum he sent to Richard P. As we have discussed, the contents of this memorandum address only Desai's compliance, as a University employee, with University policy with respect to his outside consulting work and employment of international students. Irrespective of whether this memorandum was misleading, it was written within the scope of Desai's employment.[7]

**Conclusion**

¶21        Viewing the evidence in the light most favorable to Dube, we conclude the trial court did not err in finding no genuine issue of material fact as to whether Desai was acting within the scope of his employment and that, therefore, Dube's failure to comply with § 12-820.01 required dismissal of his complaint. There is no more than a scintilla of evidence to suggest that Desai was not "authorized to perform any act or service," § 12-

---

[7]On appeal Dube cites *Balson v. Ohio State Univ.*, 677 N.E.2d 1216 (Ohio Ct. App. 1996), in support of his assertion that Desai was acting on behalf of C. Desai, Inc. As the Desais observe in their answering brief, *Theobald v. Univ. of Cincinnati*, 827 N.E.2d 365 (Ohio Ct. App. 2005), calls into doubt the analysis in *Balson*. But, in any event, *Balson* involved the question whether a physician-faculty member of a state university, who was also a member of a private corporation, was acting within the scope of his employment for the university when he performed a particular surgery. 677 N.E.2d at 1218-19. *Balson* would only be applicable to the question whether Desai's research for C. Desai, Inc., or his supervision of students performing that research, was conducted within the scope of his employment for the University. Again, the actions complained of do not include research performed for C. Desai, Inc.; the actions that form the basis of the complaint are the communications Desai sent after November 4, 2002.

820(1), when he engaged in the conduct upon which Dube's claims of tortious interference are based. Nor is there any admissible evidence to suggest that Desai was acting solely on behalf of C. Desai, Inc. or that his actions were not at least incidental to his employment and therefore motivated by the University's interests. We further conclude that "the trial judge would not have been required to pass on the credibility of witnesses with differing versions of material facts, would not have been required to weigh the quality of documentary or other evidence, and was not required to choose among competing or conflicting inferences." *Orme Sch.*, 166 Ariz. at 311, 802 P.2d at 1010.

¶22 In light of the foregoing, we affirm the trial court's grant of summary judgment, dismissing Dube's complaint against Chandra Desai and Patricia Desai.

_____
JOSEPH W. HOWARD, Presiding Judge

CONCURRING:

_____
JOHN PELANDER, Chief Judge

_____
J. WILLIAM BRAMMER, JR., Judge

17